Filed 12/10/15

# IN THE SUPREME COURT OF CALIFORNIA

RANDALL KEITH HAMPTON et al.,    )
                                            )

          Plaintiffs and Appellants,    )

                                            )          S213132

          v.                               )

                                            )    Ct.App. 4/1 D061509

COUNTY OF SAN DIEGO,    )

                                            )     San Diego County

          Defendant and Respondent.   )  Super. Ct. No. 37-2010-00101299-
                                            )            CU-PA-CTL
_____)

A public entity may be liable for injuries caused by dangerous conditions of public property.  (Gov. Code, §§ 830, 835.)[1]  An entity may avoid liability, however, through the affirmative defense of design immunity.  (§ 830.6.)  "A public entity claiming design immunity must establish three elements:  (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design."  (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66 (*Cornette*).)  The present case concerns the second element of design immunity set out in section 830.6 — discretionary approval.

In their petition for review, plaintiffs framed the issues as follows:  "(1) Does a public official's approval of a design constitute an 'exercis[e] of discretionary authority' under []section 830.6 if, at the time he [or she] approved the design, the official did not

---

[1]    Statutory references are to the Government Code unless otherwise indicated.

1

realize the design deviated from governing standards? [¶] (2) Where a design deviates from governing standards, must the public entity show that the official who approved the design had the authority to disregard those standards?"

We conclude that the discretionary approval element of section 830.6 does not implicate the question whether the employee who approved the plans was aware of design standards or was aware that the design deviated from those standards. The issue of the adequacy of the deliberative process with respect to design standards may be considered in connection with the court's determination whether there is substantial evidence that the design was reasonable. In addition, the discretionary approval element does not require the entity to demonstrate in its prima facie case that the employee who had authority to and did approve the plans also had authority to disregard applicable standards.

We affirm the judgment of the Court of Appeal affirming the trial court's order granting the County of San Diego's motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Before dawn on a day in early November 2009, plaintiff Randall Keith Hampton was seriously injured in a collision between his vehicle and another that occurred at the intersection of Miller and Cole Grade Roads in San Diego County. Hampton alleged that the accident occurred when, attempting a left turn, he pulled forward from Miller Road, a rural side road, onto Cole Grade Road, a rural two-lane thoroughfare that had paved shoulders in addition to marked lanes of traffic.

Hampton and his wife sued defendant Robert Cullen, the other driver, alleging his negligence caused the accident. Hampton suffered brain injuries and was unable to recall whether he had stopped at the stop sign at the intersection. Cullen stated that Hampton's vehicle entered the intersection "right in front of him, leaving too little time to stop before the collision." The on-scene accident report prepared by an officer of the California

2

Highway Patrol concluded that plaintiff had caused the accident by failing to stop at the stop sign on Miller Road before proceeding into the intersection.

At issue in the present matter is not the question of driver negligence, however, but the Hamptons' additional cause of action against the County of San Diego (County) for maintaining an allegedly dangerous condition of public property. (§ 835 et seq.) The Hamptons' principal claim against the County was that the design and construction of the intersection where the accident occurred afforded inadequate visibility under applicable County design standards for a driver turning left from Miller Road onto Cole Grade Road. They presented evidence that a high embankment covered with vegetation substantially impaired visibility for drivers turning left from Miller Road onto Cole Grade Road. They alleged that the County's design drawings for the intersection did not describe or depict the embankment or take it into account as an impediment to visibility, nor did the design plan identify the sight distance a driver in plaintiff Hampton's position would have, nor, significantly, did the design afford the visibility required by County standards.

The County moved for summary judgment or summary adjudication of issues, claiming design immunity under section 830.6. In support, it proffered reports that traffic studies had suggested that visibility from Miller Road at the intersection had been impaired because of the grade of Cole Grade Road. The County proffered design plans and other evidence indicating that County engineers accordingly set out to improve visibility by lowering the grade on that thoroughfare — along with installing some warning signs and other measures. In fact, as shown by County road studies and plans and an expert's declaration, the grade successfully was lowered and the warning signs were installed along with a stop sign on Miller Road in preference to a stop light.

The County's principal expert, Robert Goralka, was employed as the County Traffic Engineer for the County of San Diego. In addition to outlining the dangers addressed by the County's road studies, and the improvements accomplished by its

3

design plans as executed, Goralka's declaration described the approval process for the plans. It explained that prior to construction the plans were "signed by David Solomon, a licensed civil engineer and traffic engineer who served as Deputy County Engineer and was in charge of the County of San Diego Design Engineering Section. As the person in charge of the County's Design Engineering Section, Solomon had been delegated by the County Board of Supervisors, through the Director of the Department of Public Works, [the] discretion and authority to approve plans such as [the improvement plan]. After the project was completed, 'as-built' plans were approved and signed by John Bidwell, a licensed civil engineer who served as senior Civil Engineer of the County's Design Engineering section on April 13, 1998."

Goralka's declaration averred that at the time of the accident, the intersection was substantially as called for in the design plans and that there had been no significant changes since the plans were approved. Goralka went on to opine that the design plan was reasonable because it provided adequate visibility for a driver on Miller Road who could "creep forward" from the stop sign toward the edge of the lane of oncoming traffic on Cole Grade Road. He added that the plan was a reasonable improvement in light of design constraints "including roadways already in place that are near the crest of a hill and an embankment with existing utilities."

The Hamptons opposed the motion for summary judgment, stating that disputed issues of fact remained concerning two elements of the County's immunity defense; namely, whether there had been discretionary approval of the intersection design within the meaning of the statute and whether the County had proffered substantial evidence that such a design was reasonable. They also argued that through changed conditions of the intersection, of which the County had notice, the County lost whatever design immunity it had ever possessed. We are concerned here solely with the discretionary approval element.

4

A principal point made by the Hamptons' opposition and evidence was that the design plans proffered by the County did not show a geographic feature — the high, raised embankment covered with shrubs — that allegedly would seriously impede the visibility or "sight distance" available to a motorist who stopped at the stop sign on Miller Road and sought to turn left onto Cole Grade Road. Plaintiffs measured visibility from a certain vantage point that they asserted, with some support in documentary evidence and expert declarations, was the point required by County standards. They argued that the embankment rendered visibility plainly inadequate under applicable County standards.

There was a conflict in the evidence concerning the vantage point from which visibility should be measured under County standards. Plaintiffs presented evidence that county design standards required that visibility be measured from behind the "limit line," referred to variously as a point a certain distance behind the curb or edge of pavement of the cross street. It was undisputed that from that vantage point, visibility would be impaired by the embankment and would not meet County standards. The County, by contrast, presented evidence that County design standards called for a different vantage point when work on existing as opposed to new roads was involved. According to the County's expert, for existing roads, visibility was to be measured a few feet behind the painted edge of the lane of oncoming traffic. Design standards contemplated, in other words, that drivers would stop at the stop sign on Miller Road and then "creep forward" onto Cole Grade Road to a point a few feet back from the edge of the lane of oncoming traffic. From that vantage point, the embankment, albeit concededly absent from the design drawings, would present no barrier to visibility and, in fact, visibility would meet or exceed County standards.

The trial court granted summary judgment in the County's favor on the basis of design immunity. The trial court concluded there was substantial evidence supporting each of the three elements of design immunity. First, it pointed out that plaintiffs had

5

conceded the first element, causation. Second, it determined that Solomon's position as the director of the County's design engineering section, meant that "he had been delegated by the County Board of Supervisors, through the Director of the Department of Public Works, to have discretion and authority to approve such plans[, and] [t]his bespeaks sufficient discretion to entitle the County to invoke design immunity as a matter of law. The court finds that the Goralka declaration is of solid evidentiary value and inspires confidence in the conclusions expressed." In addition, the trial court said, "the as-built plan drawing was signed off on by John Bidwell, Senior Engineer in the Design Engineering Section. This was all that was required."

Third, the court also found substantial evidence upon which a reasonable public employee could have adopted the plan, adding that typically the opinion of one engineer in the public entity's favor is sufficient, and that because substantial evidence is all that was required, the contrary opinion expressed by plaintiff's expert did not create a triable issue of fact. Finally, the court also determined that there were no material triable issues of fact concerning whether changed conditions rendered the intersection dangerous or whether the County had notice of such changes.

The Court of Appeal agreed with the trial court that the County had established the defense of design immunity for the purpose of summary judgment. With respect to the second element of design immunity — discretionary approval — it concluded that "the trial court properly determined that in presenting undisputed evidence that a licensed civil and traffic engineer employed by the County approved the Plans prior to construction, that this engineer had the discretionary authority to approve the Plans, and that another licensed engineer employed by the County approved and signed the 'as built' plans after construction of the improvements, the County demonstrated the discretionary approval element of its design immunity defense as a matter of law."

In the view of the Court of Appeal, evidence of the County's deviation from its own design standards was not a consideration that would preclude the grant of summary

6

judgment in the County's favor.  The court declined to follow contrary language in *Levin v. State of California* (1983) 146 Cal.App.3d 410 (*Levin*) and *Hernandez v. Department of Transportation* (2003) 114 Cal.App.4th 376 (*Hernandez*).  Plaintiffs' petition for review was limited to the discretionary approval element of design immunity.  Plaintiffs did not challenge the trial and appellate courts' decision concerning the reasonableness of the plan or their conclusion that the County did not lose design immunity due to changed circumstances.

## II.  DISCUSSION

### A.  *Standard of review*

"A trial court properly grants a motion for summary judgment where 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  (Code Civ. Proc., § 437c, subd. (c).)  'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.  [Citation.]  " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.)

### B.  *General principles governing government tort claims and design immunity*

Under the Government Claims Act, "[a] public entity is not liable for an injury," "[e]xcept as otherwise provided by statute."  (§ 815, subd. (a); see *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897 ["there is no common law tort liability for public entities in California"]; *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1179 ["the intent of the Tort Claims Act is to confine potential governmental liability, not expand it"].)

7

The Government Claims Act (Act) provides for direct liability on the part of public entities for injuries caused by maintaining dangerous conditions on their property when the condition "created a reasonably foreseeable risk of the kind of injury which was incurred" and either an employee's negligence or wrongful act or omission caused the dangerous condition or the entity was on "actual or constructive notice" of the condition in time to have taken preventive measures. (§ 835; see *Cornette*, *supra*, 26 Cal.4th at p. 66.) A dangerous condition is one that "creates a substantial risk of injury" when the property is "used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

If a dangerous condition is demonstrated, the public entity may still prevail against a claim by means of an affirmative defense of immunity. Various types of public sector immunity have been established by statute (see, e.g., §§ 830.8 [immunity for "failure to provide traffic or warning signals" except when necessary to avoid a trap for drivers exercising due care], 831.2 [immunity for natural condition of unimproved public property]), but the present case concerns solely the affirmative defense of design immunity under section 830.6.

Section 830.6 provides in pertinent part: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." Additional language governs circumstances under which design immunity

8

may be lost when the danger arises out of a change in physical conditions of which the entity had notice and as to which it had time to obtain funding for and perform remedial work or provide appropriate warnings. (*Ibid.*, see *Cornette*, *supra*, 26 Cal.4th at p. 66.)

### C. *Discretionary approval element*

Plaintiffs contend that "approv[al]" by one "exercising discretionary authority" (§ 830.6), requires an exercise of discretion in the sense of an exercise of judgment or choice, and that, in their words, "one cannot truly exercise judgment or make a choice without an awareness of what is to be judged or chosen." According to plaintiffs, "only an engineer who realizes a design does not conform to governing standards can truly make a discretionary decision to approve the design despite its nonconformity. By contrast, an engineer who approves a nonconforming design on the mistaken belief it conformed to governing standards has acted through inadvertence, not discretion."

We disagree. Plaintiffs' claim essentially is that there was an abuse of discretion. As we shall demonstrate, however, such claims are considered under the reasonableness element of the statute.

As always, "our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." (*Estate of Griswold* (2001) 25 Cal.4th 904, 910.)

The Act, including the design immunity statute, was adopted in 1963 (as the Tort Claims Act) in response to judicial decisions abrogating principles of sovereign immunity. The language governing the element of discretionary authority is unchanged to this day. The Law Revision Commission (Commission) comment regarding section 830.6 describes the provision as "provid[ing] immunity where a governmental body exercises the discretion given to it under the laws of the State in the planning and designing of public construction and improvements. . . . [¶] The immunity provided by Section 830.6 is similar to an immunity that has been granted by judicial decision to public entities in New York. See *Weiss v. Fote*, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960)." (Recommendation Relating to Sovereign Immunity (Jan. 1963)

9

Proposed Legislation, com. foll. § 830.6, 4 Cal. Law Rev. Com. Rep. (1963) p. 851, com. reprinted in West's Ann. Gov. Code (2012 ed.) foll. § 830.6, p. 40.)

A statement by the Commission suggests that the discretionary approval element of section 830.6 does not call for a jury to examine whether the employee who approved a plan realized that the plan deviated from applicable standards. Rather, the statement indicates that the law's purpose is to avoid the dangers involved in permitting re-examination and second-guessing of governmental design decisions in the context of a trial: "While it is proper to hold public entities liable for injuries caused by arbitrary abuses of discretionary authority in planning improvements, to permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested." (Recommendation Relating to Sovereign Immunity, *supra*, 4 Cal. Law Revision Com. Rep. at p. 823.) We have recognized that this statement reflects legislative intent. (*Cornette*, *supra*, 26 Cal.4th at p. 69; *Cameron v. State of California* (1972) 7 Cal.3d 318, 326 (*Cameron*).) Plaintiffs' interpretation of the statute, however, would implicate the adequacy of the deliberative process at the discretionary approval stage and would lead a jury into just the sort of second-guessing concerning the wisdom of the design that the statute was intended to avoid.

Moreover, the text of the statute does not suggest that a triable issue on the discretionary approval element occurs whenever there is a conflict in the evidence concerning applicable design standards and the plaintiff raises the question whether the designated employee realized the design deviated from applicable standards. Ordinarily we are not free to add text to the language selected by the Legislature. (Code Civ. Proc., § 1858; *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1108.) Rather, as the Court of Appeal in the

10

present case observed, such an interpretation actually conflicts with statutory language. According to the Court of Appeal: "On the contrary, the statute provides that the discretionary element may be established *either* by evidence of appropriate discretionary approval *or* evidence that the plan conformed with previously approved standards. (§ 830.6 ['Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design . . . where such plan or design has been approved . . . by some . . . employee exercising discretionary authority to give such approval *or* where such plan or design is prepared in conformity with standards previously so approved . . . . ' (italics added)].)" That the statute permits, as one alternative, that the discretionary approval element may be established through proof that the design complies with discretionarily approved standards suggests that the other alternative, that is, discretionary approval by the appropriate employee, does not require evidence of the employee's awareness of and compliance with standards.

The structure of the provision as a whole also supports our interpretation. Under the statute, once causation and approval by an authorized employee or compliance with appropriately adopted standards is established, there is immunity so long as "the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." (§ 830.6.) This three-part structure implies that the wisdom of the design is evaluated — by the court — under the reasonableness element of the immunity statute, and not under the element asking a jury to decide whether an employee vested with discretion to approve the plans actually approved them.

Indeed the Commission's comments make plain that it is the reasonableness element of section 830.6 that supplies the statutory bulwark against arbitrary abuse of discretion in the initial planning decision. As the Commission declared: "There should

11

be immunity from liability for the plan or design of public construction and improvements where the plan or design has been approved by a governmental agency exercising discretionary authority, *unless* there is no reasonable basis for such approval." (Recommendation Relating to Sovereign Immunity, *supra*, 4 Cal. Law Revision Com. Rep. at p. 823, italics added.)

Thus, considered as a whole, it appears plain that section 830.6 was intended to avoid second-guessing the initial design decision adopted by an employee vested with authority to approve it, except to the extent the court determines that the employee's approval of the design was unreasonable. It is at the reasonableness stage that the court would consider whether an employee, in either knowingly or unknowingly approving a design that deviates from applicable standards, adopted a design that a "reasonable legislative body or other body or employee could have approved." (§ 830.6.) Plaintiffs' contrary interpretation would undermine the function of the statute's reasonableness element, a result that would be inconsistent with our duty to read the elements of the statute together, harmonizing and giving effect to them all. (*Los Angeles Unified School Dist. v. Garcia* (2013) 58 Cal.4th 175, 186; *City of Huntington Beach v. Board of Administration* (1992) 4 Cal.4th 462, 468.)

We also note practical problems with plaintiffs' interpretation. Although objective proof of the fact of approval by an employee with authority to approve the plan may be readily available, evidence of the standards actually considered by the decision makers, as well as the reasoning and motivation of those employees, will be much more scarce with the passage of time. Plaintiffs' interpretation could produce the anomaly of different immunity outcomes for identical designs depending simply upon the recordkeeping ability of the public entities involved, or the availability of employees who are able to remember the decisionmaking process of the persons involved — a process that may have occurred long before the lawsuit.

12

Our understanding of the statute finds support in the New York high court's decision in *Weiss v. Fote*, *supra*, 167 N.E.2d 63 (*Weiss*) — the decision to which the Commission referred as a source of our own law. In *Weiss*, a pedestrian brought suit after a car that had crashed into another car in an intersection veered into the pedestrian, injuring her. She argued that the car accident was caused by a traffic signal that had improper timing intervals pursuant to a local entity's design. Although the state and its subdivisions owed a duty to keep streets in a reasonably safe condition, the decision declared that courts "would not go behind the ordinary performance of planning functions by the officials to whom those functions were entrusted." ( *Id.* at p. 65.) In other words, it was not for courts to take " 'administration of municipal affairs out of the hands to which it has been entrusted by law.' " (*Ibid.*) When the power over design of public improvements such as streets rests with public officials or entities, " 'the duty to make them is *quasi* judicial or discretionary, involving a determination as to their necessity, requisite capacity, location, etc., and for a failure to exercise this power or an erroneous estimate of public needs, no civil action may be maintained.' [. . . .] '[To permit such actions] would be to take the administration of municipal affairs out of the hands to which it has been entrusted by law. ' " (*Ibid.*) Similarly, design "immunity [rests] on the policy of maintaining the administration of municipal affairs in the hands of state or municipal executive officers as against the incursion of courts and juries." (*Ibid.*)

The New York court explained further: "Lawfully authorized planning by governmental bodies has a unique character deserving of special treatment as regards the extent to which it may give rise to tort liability. It is proper and necessary to hold municipalities and the State liable for injuries arising out of the day-by-day operations of government, . . . but to submit to a jury the reasonableness of the lawfully authorized deliberations of executive bodies presents a different question. [Citations.] To accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and

passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts." (*Weiss*, *supra*, 167 N.E.2d at pp. 65-66.)

We acknowledge that the *Weiss* court referred both to the reasonableness of the design decision and the care or study with which it was adopted. The court pointed to evidence that the city council, through its agent the board of safety, had made an extensive study of traffic conditions at the intersection and had reached "considered judgment" based on the studies before it regarding a "reasonably safe" timing interval for the traffic lights. (*Weiss*, *supra*, 167 N.E.2d at p. 66.) The court, noting these studies, found that there was no evidence to suggest that the local entity's decision was "either arbitrary *or* unreasonable." (*Ibid.*, italics added.) "[A]bsent some indication that due care was not exercised in the preparation of the design *or* that no reasonable official could have adopted it — and there is no indication of either here — we perceive no basis for preferring the jury verdict, as to the reasonableness of the 'clearance interval,' to that of the legally authorized body which made the determination in the first instance." (*Ibid.*, italics added.) In sum, the court concluded: "We are of the opinion that the traditional reliance on a jury verdict to assess fault and general tort liability is misplaced where a duly authorized public planning body has entertained and passed on the very same question of risk as would ordinarily go to the jury. . . . For this reason, liability for injury arising out of the operation of a duly executed highway safety plan may only be predicated on proof that the plan *either* was evolved without adequate study *or* lacked reasonable basis." (*Id.* at pp. 67-68, italics added.)

In our view, however, the court's alternating references to decisions made without adequate study and those lacking a reasonable basis for approval appear to be simply components of a broader reasonableness inquiry. These comments fail to give significant support to plaintiffs' interpretation of our own statute. Indeed, the *Weiss* court made it plain that it was following long-established authority recognizing the importance of

14

leaving design decisions — including the design's necessity, wisdom, completeness, and capacity — in the hands of the political branches. (*Weiss*, *supra*, 167 N.E.2d at pp. 65-67; see *Alexander v. Eldred* (N.Y. 1984) 472 N.E.2d 996 [suggesting that under New York law, arbitrary or uninformed decisionmaking should be analyzed under the reasonableness element of design immunity].) Similarly, the *Weiss* court recognized authority establishing that mere design error should not defeat immunity. (*Weiss*, *supra*, 167 N.E.2d at pp. 66, 67.) These considerations would be defeated if the trier of fact were to reevaluate, in connection with the discretionary authority element of design immunity, whether the employee who approved the design was adequately informed regarding and actually considered all potentially relevant entity standards.

Plaintiffs cite a footnote in *Johnson v. State of California* (1968) 69 Cal.2d 782 in support of their interpretation of what "exercising discretionary authority" (§ 830.6) means. In that case we interpreted a statute providing immunity for public employees for injuries resulting from an act or omission that "was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." (§ 820.2.) Our principal task in that case was to distinguish discretionary from ministerial acts, as the latter carried no immunity. We declined to be drawn into debate concerning a literal or mechanical definition of an exercise of discretion. (*Johnson*, *supra*, at pp. 788-789.) Rather, we looked to the policy basis for governmental immunity for discretionary as opposed to ministerial acts, locating the policy in "concern for the court's role in the governmental structure" (*id*. at p. 794), and, more specifically, in avoiding placing courts in "the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government." (*Id.* at p. 793.) In a footnote we agreed with the plaintiff's argument that the statute required the state to prove "that the employee, in deciding to perform the act that led to plaintiff's injury, consciously exercised discretion in the sense of assuming certain risks in order to gain other policy objectives." (*Id*. at p. 794, fn. 8.) We further agreed with plaintiffs that to obtain immunity for discretionary

15

or policy decisions, "the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." (*Ibid.*)

*Johnson* interpreted a different statute employing different language from that found in section 830.6, and, as noted, our principal task in that case was to distinguish discretionary from ministerial acts, a distinction that plaintiffs' argument does not rest on in this case. Moreover, the question of whether discretion has been exercised at all is different from the question of how well it was exercised. We have since explained that in the context of section 820.2 itself, we did not mean to suggest in *Johnson* that the public entity must demonstrate a "strictly careful, thorough, formal, or correct evaluation. Such a standard would swallow an immunity designed to protect against claims of carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy." (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 983-984 (*Caldwell*), italics omitted.)

In the *Caldwell* case, the question was whether the decision of school board members not to renew a school superintendent's employment contract was a discretionary policy decision subject to immunity under section 820.2. The allegations of the complaint indicated that the board members "made an *actual, conscious, and considered* collective policy decision to replace plaintiff as superintendent. The complaint admits of no theory that the Board acted unconsciously or failed to weigh pros and cons. On the contrary, [the complaint] asserts that Board members *did* purposely employ standards they deemed relevant, but that [according to the plaintiffs] the standards employed were wrong and impermissible. For reasons already stated, *claims of improper evaluation cannot divest a discretionary policy decision of its immunity*." (*Caldwell, supra,* 10 Cal.4th at p. 984, fn. omitted, final italics added.)

Just as in *Caldwell*, plaintiffs do not allege that the responsible engineers failed to exercise their discretion or judgment at all. Rather, plaintiffs allege in essence that the

16

engineers applied the wrong design standards and *erred* in their exercise of judgment because they were unaware of the correct standards. These allegations simply claim an "improper evaluation," that is, carelessness, bad judgment, or abuse of discretion. But under *Caldwell*, such a claim "cannot divest a discretionary policy decision of its immunity." (*Caldwell*, *supra*, 10 Cal.3d at p. 984; and see *id*. at p. 984, fn. 6.)

We acknowledge that the decisions in *Levin*, *supra*, 146 Cal.App.3d 410, and *Hernandez*, *supra*, 114 Cal.App.4th 376, support plaintiffs' interpretation of the statute. In *Levin*, a driver who veered to avoid an oncoming car that had crossed into her lane was killed when her vehicle went over an embankment into a channel filled with water. The plaintiffs' complaint alleged a dangerous condition in that the highway design omitted adequate shoulders or a guardrail near the steeply sloped embankment. There was evidence that the design violated state guardrail standards. The reviewing court, having already identified a triable issue of fact on the causation element of design immunity, also found a triable issue of fact with respect to the discretionary approval element. Its analysis was brief: "As our Supreme Court pointed out in *Cameron* [, *supra*,] 7 Cal.3d 318, 326, the rationale of the design immunity defense is to prevent a jury from simply reweighing the same factors considered by the governmental entity which approved the design. An actual informed exercise of discretion is required. The defense does not exist to immunize decisions that have not been made. Here, as in *Cameron*, *supra*, the design plan contained no mention of the steep slope of the embankment. The state made no showing that [the engineer], who alone had the discretionary authority, decided to ignore the standards or considered the consequences of the elimination of the eight feet shoulder. It follows that the state also failed to establish the second element of the defense." (*Levin*, *supra*, 146 Cal.App.3d at p. 418.)

In *Hernandez*, *supra*, 114 Cal.App.4th 376, the family of a decedent and persons injured in an accident on a freeway off-ramp sued the state Department of Transportation, alleging that the absence of a guardrail on the off-ramp constituted a dangerous condition

17

of public property that caused the injuries and death. Plaintiffs presented evidence that the off-ramp design violated state guardrail standards and that state rules required that formal approval of any deviation from standards be recorded in the project approval document. (*Id.* at pp. 380-381.) The principal question before the Court of Appeal was whether the discretionary approval element is one of fact for the jury or of law for the court, and having appropriately concluded that the element is for the jury (*Cornette*, *supra*, 26 Cal.4th at pp. 66, 74-75 & fn. 3; *Laab v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1264), the Court of Appeal appeared to rely on *Levin* for the proposition that summary judgment was inappropriate so long as there was a dispute in the evidence concerning the factual questions whether the design violated applicable standards and whether deviation from standards had been knowingly approved by the responsible officials. (*Hernandez*, *supra*, 114 Cal.App.4th at p. 386, see also *id.* at p. 388.) *Hernandez* relied on *Levin*, and *Levin*, in turn — with little analysis — relied on our decision in *Cameron*, *supra*, 7 Cal.3d 318, as the principal authority for its decision.

Our decision in *Cameron*, *supra*, 7 Cal.3d 318, however, does not supply the necessary authority in support. In that case the plaintiffs sustained injury when they lost control of their car on a highway. Their complaint alleged that the injuries were caused by a dangerous condition on the highway, namely uneven banking, also referred to as "superelevation," on a curve in the road. (*Id.* at p. 323) The state countered that although the uneven banking or superelevation on the highway constituted a dangerous condition of its property, the state was immune from liability under section 830.6 because the uneven banking "was part of a duly approved design or plan of the highway." (*Cameron*, *supra*, 7 Cal.3d at p. 324.) The plaintiffs responded that even if plans for the highway were approved by the appropriate entity, "such plans did not contain any design for or mention of superelevation, and that therefore the design immunity provided for by section 830.6 is inapplicable." (*Ibid.*)

18

We reversed the trial court's entry of a judgment of nonsuit in favor of the state, finding that the state had failed to meet its burden of establishing all the elements of design immunity as a matter of law. We summarized the state's evidence that the highway plans were prepared by appropriate county employees and had been approved by the county board of supervisors, adding that the board of supervisors "was the proper body to exercise the discretionary authority referred to in section 830.6. The record also contains a declaration by . . . a civil engineer employed by the state, to the effect that the design contained in the plan was in accordance with mid-1920 standards of design and was reasonable." (*Cameron*, *supra*, 7 Cal.3d at p. 325, fn. omitted.) We said these items of evidence clearly were "sufficient to establish the initial applicability of an immunity under section 830.6." (*Ibid*.)

We observed that the plaintiffs had produced evidence that the superelevation did not appear in the plan. (*Cameron*, *supra*, 7 Cal.3d at p. 325.) There was evidence from a state highway engineer who reviewed the design plans and acknowledged that they did not show any superelevations or cross sections and that " 'that was an omission on the plans.' " (*Id*. at p. 325, fn. 9, italics omitted.) A civil engineer called by the plaintiffs testified regarding the design plans that "[t]hey do not give you any grades or elevations other than the center line profile.' " (*Ibid*.) The plaintiffs therefor urged that "there is no evidence showing that the uneven superelevation was the result of a design or plan approved by the . . . Board of Supervisors." (*Id*. at pp. 325-326.)

Recalling that the rationale behind design immunity is to prevent a jury from reweighing the same factors the public entity already considered during its discretionary approval of the design, we said there would be no such reexamination in the case before us: "Here the state has presented no evidence that the superelevation which was actually constructed on the curve in question . . . was the result of or conformed to a design approved by the public entity vested with discretionary authority. Thus, there would be no reexamination of a discretionary decision in contravention of the design immunity

19

policy because there has been no such decision proved.  The state merely showed that the . . . Board of Supervisors approved a design showing the course of the right of way and the elevation above sea level of the white center stripe for the road.  The design plan contained no mention of the superelevation intended or recommended.  Therefore such superelevation as was constructed did not result from the design or plan introduced into evidence and there was no basis for concluding that any liability for injuries caused by this uneven superelevation was immunized by section 830.6."  (*Cameron*, *supra*, 7 Cal.3d at p. 326, fn. omitted.)

The above account shows that *Cameron*, *supra*, 7 Cal.3d 318, is not authority for the interpretation of section 830.6 suggested by *Levin*, *supra*, 146 Cal.App.3d 410 and *Hernandez*, *supra*, 114 Cal.App.4th 376.  *Cameron*, unlike *Levin* and *Hernandez* (and unlike the present case), did not concern the question whether a design deviated from applicable standards or whether the approving employee was aware of a deviation from standards and nonetheless decided to approve the plan.  Our discussion in *Cameron* of the rationale of design immunity — to prevent a jury from " 'simply reweighing the same factors considered by the governmental entity which approved the design,' " — along with our comment that there had been no discretionary decision on the superelevation (*Cameron*, *supra*, 7 Cal.3d at p. 326), were not intended to and did not suggest that, under the discretionary approval element of section 830.6, the public entity bears the burden of demonstrating that its employee considered all potentially applicable standards.  Indeed, such a requirement would constitute a surprising retreat from the basic understanding that the discretionary approval element of design immunity asks whether a person vested with discretion to approve the plan did approve the plan or design that was built, and that the question whether it was wise to approve the plan is judged under the reasonableness element of the statute.

Nor did our recitation in *Cameron*, *supra*, 7 Cal.3d 318, of various facts that we believed amply demonstrated a prima facie showing of entitlement to design immunity

20

under *all* the elements of section 830.6 — including the reasonableness element — indicate that each of the factors we mentioned was part of the required prima facie showing for the discretionary approval element.  Plaintiffs are correct that in *Cameron* we stated that the state's engineer declared that "the design contained in the plans was in accordance with mid-1920 standards of design and was reasonable" (*id*. at p. 325), but nothing in our statement suggests that, as opposed to being a circumstance that was relevant to the *reasonableness* of the plans at the time they were adopted in 1920, evidence concerning the approving employee's awareness of applicable standards was necessary to the prima facie showing for discretionary approval element.  Because they conflict with our interpretation of the statute and find no support in *Cameron*, *supra*, 7 Cal.3d 318, we disapprove *Levin v. State of California*, *supra*, 146 Cal.App.3d 410 and *Hernandez v. Department of Transportation*, *supra*, 114 Cal.App.4th 376, to the extent they are inconsistent with today's opinion.

As noted at the outset, plaintiffs made a subsidiary claim that the public entity, in order to establish a prima facie case in support of the discretionary approval element of section 830.6, was required to establish that the employees who approved the plans had authority to deviate from applicable visibility standards.  They offer no persuasive authority in support.  As the trial court found, the County's evidence was uncontradicted that Solomon and Bidwell had authority to approve the designs.  Plaintiffs presented no evidence that these employees lacked authority to approve designs that deviated in any respect from county standards.  Plaintiffs did not create a conflict in the evidence on the question of the employees' authority merely because they proffered evidence at trial that the designs failed to comply with county standards.

Even the *Levin* and *Hernandez* decisions themselves do not support plaintiffs' claim on this point.  We acknowledge that the *Levin* decision *noted* the absence of evidence that the employee who approved the plans had authority to disregard applicable guardrail standards.  (*Levin*, *supra*, 146 Cal.App.3d at p. 418; see also *Hernandez*, *supra*,

21

114 Cal.App.4th at p. 543.) But neither *Levin* nor *Hernandez* held that, in the absence of evidence proffered by the plaintiff that the employee lacked such authority, the public entity must establish in its prima facie case that the approving employee's authority to approve the plan included the authority to deviate from any possibly relevant standards. Indeed, we note that in *Hernandez*, *supra*, 114 Cal.App.4th 376, it was the *plaintiff* who presented evidence that the approving employees lacked authority to approve a deviation from standards. (*Id*. at pp. 380-381.)

Nor did our decision in *Cameron*, *supra*, 7 Cal.3d 318, suggest that an employee's authority to deviate from applicable standards is part of the public entity's prima facie burden with respect to the discretionary approval element of design immunity. As we have seen, *Cameron* did not turn on compliance with design standards, let alone on the presence or absence of authority to deviate from those standards. The fact that we observed in *Cameron* that the plans in that case had been prepared in accordance with governing design standards did not establish that an approving employee's authority to deviate from standards was part of the public entity's prima facie case.

## III. CONCLUSION

For the foregoing reasons the decision of the Court of Appeal is affirmed.

**CANTIL-SAKAUYE, C. J.**

**WE CONCUR:**

**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Hampton v. County of San Diego

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 218 Cal.App.4th 286
**Rehearing Granted**

_____

**Opinion No.** S213132
**Date Filed:** December 10, 2015

_____

**Court:** Superior
**County:** San Diego
**Judge:** Timothy B. Taylor

_____

**Counsel:**

Thorsnes Bartolotta McGuire, John F. McGuire, Ian C. Fusselman and Benjamin I. Siminou for Plaintiffs and Appellants.

Law Offices of Thor O. Emblem and Thor O. Emblem for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Thomas E. Montgomery, County Counsel, and Christopher J. Welsh, Deputy County Counsel, for Defendant and Respondent.

Ronald W. Beals, David Gossage, Lucille Y. Baca, Karl Schmidt and Derek S. Van Hoften for California Department of Transportation as Amicus Curiae on behalf of Defendant and Respondent.

Pollak, Vida & Fisher and Daniel P. Barer for League of California Cities and California State Association of Counties as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Benjamin I. Siminou
Thorsnes Bartolotta McGuire
2550 Fifth Avenue, 11th Floor
San Diego, CA  92103
(619) 236-9363

Christopher J. Welsh
Deputy County Counsel
1600 Pacific Highway, Room 355
San Diego, CA  92101-2469
(619) 557-4039

2