Filed 3/25/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BRIAN M. GROSSMAN, | B283956 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC557349) |
| v. | |
| SANTA MONICA-MALIBU UNIFIED SCHOOL DISTRICT, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Affirmed.

Law Office of Michael A. Naso and Michael A. Naso for Plaintiff and Appellant.

Yukevich Cavanaugh, Cristina M. Ciminelli and Victoria L. Danna for Defendant and Appellant.

_____

Brian M. Grossman suffered serious injuries when he fell off a 27-foot-tall inflatable slide while attending a carnival held at a school campus owned by the Santa Monica-Malibu Unified School District (the school district).  Grossman sued the school district, the school booster group, and others for negligence, alleging he fell because the inflatable slide was not tethered to the ground.  Grossman appeals from the judgment entered after the trial court granted the summary judgment motion filed by the school district.  Grossman contends there were triable issues of fact whether the school district was liable for its breach of a duty of care owed to him under Education Code section 38134, subdivision (i)(1).[1]  The school district cross-appeals from the trial court's ruling that the school district was equitably estopped from arguing Grossman failed to comply with the Government Claims Act (Gov. Code, § 810 et seq.).

We conclude the Education Code allocates liability for negligence between school districts and entities allowed to use school district grounds, including in this case the booster group that planned and held the carnival fundraiser.  The school district was "liable for an injury resulting from the negligence of the school district in the ownership and maintenance of the school facilities or grounds."  (§ 38134, subd. (i)(1).)  By contrast, "[a]n entity using the school facilities or grounds . . . is liable for an injury resulting from the negligence of that entity during the use of the school facilities or grounds."  (*Ibid.*)  Here, Grossman's injuries resulted from the alleged negligence of the booster group and others "during the use of" the school grounds, not from the school district's ownership and maintenance of the grounds.

---

[1]     Undesignated statutory references are to the Education Code unless otherwise indicated.

Further, section 38134, subdivision (i)(2), clarifies that the Education Code does not alter the provision in Government Code section 835 limiting a public entity's liability to "an injury caused by a dangerous condition of public property." As a matter of law the inflatable slide was not a dangerous condition of public property within the meaning of Government Code section 835. We affirm the judgment and dismiss the school district's cross-appeal as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Carnival Fundraiser*

On August 21, 2012 the booster group and parent-teacher association (PTA) submitted an availability request form to the school district for various events, including a carnival fundraiser at Roosevelt Elementary School (the school). The carnival is an annual fundraising event that has been held at the school since at least 2008. Both the booster group and the PTA are nonprofit entities independent from the school district, organized to promote youth and school activities. The school district approved the use of its facilities and grounds by the booster group and PTA for the carnival. The school district did not charge the booster group or PTA for using the school grounds.

Heike Macklin, the president of the booster group at the time, was the primary organizer of the carnival. Macklin contracted with WOW Party Rental, Inc. (WOW Rental), to lease an inflatable slide. She also contracted with James Event Productions, Inc. (James Event), to provide other attractions at the carnival and the generator that powered the inflatable slide. No one from the school or the school district gave Macklin any

3

written materials or oral instructions relating to safety precautions for the event, or advised her to perform safety inspections.

The school allowed the booster group to promote the carnival on the school Web site, place banners on school grounds, and advertise on the school's marquee. In addition, school teachers distributed flyers about the event. But the school district did not plan, set up, operate, or supervise the carnival, including the inflatable slide. Similarly, the school district did not inspect the rides to determine whether they were safe. Any teacher that staffed a carnival attraction served as a volunteer for the booster group.

On the morning of the carnival, WOW Rental employees set up the inflatable slide on the playground. Macklin selected the location for the slide, which was in the same place as in prior years. The booster group had used a similar slide for the past three years as a carnival attraction, without any injuries.

B.    *Grossman's Accident*

On June 1, 2013 Grossman attended the carnival and purchased tickets from the booster group for the carnival attractions. Grossman gave his tickets to a volunteer stationed at the slide, Beth Eckstein, so his three-year-old son Merrick could go on the 27-foot-tall inflatable slide. When Merrick climbed up the stairs to the top of the landing, he became scared of the height and called out for help. Grossman asked Eckstein what to do, and she instructed him to go to the top of the slide to bring Merrick down. The stairs leading to the top of the slide were blocked by three other people, so Eckstein told Grossman to climb up the middle of the slide. When Grossman reached the

4

landing, he held Merrick on his lap to comfort him. A moment later, the landing of the slide suddenly deflated, and Grossman and Merrick were thrown backwards to the back of the slide. Merrick screamed for help, and Grossman pulled him onto his chest. At that moment, the slide began to tip over. Grossman was able to hold onto Merrick and another three-year-old boy to protect them as all three fell over 20 feet down to the concrete below. Grossman landed on his feet, but his left foot and heel took the brunt of the fall, and he twisted his knee, then landed flat on his back.

After the accident, the slide was placed back upright. Grossman noticed the rope tethers at the top of the slide were not staked into the ground. He recalled it was a windy day with winds gusting over 15 miles per hour on the school playground.

C.     *The Complaint*

On September 10, 2014 Grossman sued the school district and James Event. On January 15, 2016 Grossman filed the operative second amended complaint against the school district, booster group, WOW Rental, and James Event for negligence, breach of warranty, and strict liability. Grossman alleged the school district owned and operated the school; the booster group planned the carnival and operated the rides, including the slide; WOW Rental rented the slide to the booster group; and James Event rented the generator used to inflate the slide, as well as other rides and booths, to the booster group.

Grossman alleged the slide was improperly set up on the side of the grass infield immediately adjacent to the concrete. In addition, the rope tethers located at the top of the slide were not staked to the ground, which would have prevented it from falling

5

over. As a result, Grossman, Merrick, and the other young boy were thrown off the slide onto the concrete over 20 feet below, causing Grossman permanent severe injuries. Grossman alleged the school district and other defendants "knew or should have known that the slide which caused [his] injuries was not set up and secured as it was supposed to be, and was not being operated properly, and constituted a dangerous condition causing an unreasonable risk of injury to its users, including [him]."

D.    *The School District's Summary Judgment Motion*

On June 14, 2016 the school district moved for summary judgment on the negligence cause of action.[2] The school district contended Grossman failed to comply with the procedure for filing a claim under the Government Claims Act (Gov. Code, § 810 et seq.). The school district also argued that although it made the school premises available to the booster group for the carnival as required by the Civic Center Act (§ 38130 et seq.), it had no involvement in the selection, approval, rental, installation, inspection, or supervision of the inflatable slide. The school district asserted Grossman's allegations of negligence arose from the placement and setup of the inflatable slide, for which the school district had no role. Neither did the school district own or control the inflatable slide. Rather, it was the independent nonprofit booster group that organized and put on the carnival and Wow Rental that rented the slide to the booster group for that purpose. The school district also argued the alleged dangerous condition (the inflatable slide) was not "of

_____

[2]    Grossman dismissed the breach of warranty and strict liability causes of action against the school district and the booster group on April 11, 2016.

6

public property"; thus, the school district owed no duty to Grossman.

In support of its summary judgment motion, the school district submitted a declaration from Carey Upton, the director of the facility use department for the school district since 2008. He stated the school district did not select, approve, or enter into a contract for any of the carnival attractions, including the inflatable slide. The school district also did not inspect, set up, or supervise the attractions, or agree to do so. School district employees did not work at the carnival, except for a janitor requested by the booster group. The school district billed the booster group for use of the janitor's services. Prior to the accident, no one complained to the school district about the unsafe condition of the inflatable slide. In addition, Upton was not aware of any other injuries resulting from the use of an inflatable slide at the school.

In his opposition, Grossman argued the school district failed to provide Macklin with its "Rules of Use for Facilities" (Rules of Use) or other safety instructions, and failed to advise Macklin to conduct safety inspections of the slide. According to Grossman, the booster group was required to obtain written permission from the school district to place the slide on the school premises under the provision in the Rules of Use that specified, "No structures may be erected or assembled, . . . or other equipment be brought on school premises unless written approval has been obtained from the Facility Permit Office." Thus, the school district controlled the slide and was responsible for the dangerous condition of the slide. Grossman also argued there were triable issues of fact whether the school district had constructive notice of the dangerous condition of the slide because

7

it failed to inspect the slide or require the booster club to inspect the slide, and it was foreseeable the slide created a substantial risk of harm to its users.

E.     *The Trial Court's Ruling and Judgment*

On April 20, 2017 the trial court granted the school district's motion for summary judgment. As a threshold matter, the trial court ruled Grossman raised a triable issue of fact as to whether the school district was estopped from arguing Grossman submitted his claim to the wrong person. The court then considered whether the school district could be held liable for negligence under section 38134, subdivision (i)(1). The court noted that pursuant to Government Code section 835, a public entity is only liable for an injury caused by a dangerous condition on its property. But Grossman's complaint alleged "the inflatable slide was set up incorrectly, not that the school grounds itself posed a dangerous condition." The court rejected Grossman's contention the school district had responsibility for the slide because it had authority to shut down the carnival under its Rules of Use. In addition, the court found Grossman did not present "evidence of any prior circumstances that would establish [the school district's] actual or constructive knowledge of a dangerous condition of public property." The trial court concluded, "[W]ith no facts showing how [the school district] was negligent with respect to its ownership or maintenance of the school facilities or grounds, [Grossman] cannot meet his burden of proof to show [the school district] breached any duty towards him."

The court entered judgment in favor of the school district on June 22, 2017.  Grossman timely appealed, and the school district timely cross-appealed.

## DISCUSSION

A.  *Standard of Review*

Summary judgment is appropriate only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Delgadillo v. Television Center, Inc.* (2018) 20 Cal.App.5th 1078, 1085.)  A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Regents of University of California*, at p. 618; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.)  If the defendant satisfies this initial burden of production, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Delgadillo*, at p. 1085.)

We independently review the trial court's grant of summary judgment, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347 (*Hampton*); *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717.)  ""We liberally construe the evidence in support of the party opposing summary judgment and resolve

9

doubts concerning the evidence in favor of that party.""" (*Hampton,* at p. 347; accord, *Wilson*, at p. 717.) "'[S]ummary judgment cannot be granted when the facts are susceptible to more than one reasonable inference . . . .'" (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1180; accord, *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 583.)

Likewise, "[w]e review questions of statutory construction de novo.  Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose.  [Citation.]  We consider first the words of a statute, as the most reliable indicator of legislative intent.  [Citation.]' [Citation.]  We construe the statute's words in context, harmonizing statutory provisions to avoid absurd results.  [Citation.]  If the statutory text is susceptible to more than one reasonable construction, we may consider extrinsic aids such as legislative history to facilitate our interpretative analysis." (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041; accord, *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089.)

B.      *The School District Is Not Liable for Grossman's Injuries Under Section 38134*

1.      *School district liability under the Civic Center Act*

Under the Civic Center Act, "each and every public school facility and grounds" is designated "a civic center." (§ 38131, subd. (a).)  Pursuant to section 38134, subdivision (a)(1), a school district must allow nonprofit organizations "organized to promote youth and school activities" to use school facilities and grounds

10

under its control.  Section 38134, subdivision (i)(1), apportions liability between the school district and the entity using the school facilities or grounds.  "A school district authorizing the use of school facilities or grounds under subdivision (a) is liable for an injury resulting from the negligence of the school district in the ownership and maintenance of the school facilities or grounds.  An entity using school facilities or grounds under this section is liable for an injury resulting from the negligence of that entity during the use of the school facilities or grounds.  The school district and entity using the school facilities or grounds under this section shall each bear the cost of insuring against its respective risks and shall each bear the costs of defending itself against claims arising from those risks."  (§ 38134, subd. (i)(1).)

Section 38134, subdivision (i)(2), provides further, "Notwithstanding any other law, this subdivision shall not be waived.  This subdivision does not limit or affect the immunity or liability of a school district under [the Government Claims Act] for an injury caused by a dangerous condition of public property." "Under the Government Claims Act, '[a] public entity is not liable for an injury,' '[e]xcept as otherwise provided by statute.'" (*Hampton, supra*, 62 Cal.4th at p. 347, quoting Gov. Code, § 815, subd. (a);[3] accord, *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897 ["there is no common law tort liability for

---

[3]     Government Code section 815, subdivision (a), provides that, except as otherwise provided by statute, "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

11

public entities"].)  Under Government Code section 835,[4] a public entity's liability for the foreseeable risk of injury arising from a dangerous condition of its property is limited to specified circumstances, including when "either an employee's negligence or wrongful act or omission caused the dangerous condition or the entity was on 'actual or constructive notice' of the condition in time to have taken preventive measures."  (*Hampton*, at pp. 347-348, quoting Gov. Code, § 835; accord, *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66 (*Cornette*).)  "A dangerous condition is one that 'creates a substantial . . . risk of injury' when the property is 'used with due care in a manner in which it is reasonably foreseeable that it will be used.'"  (*Hampton*, at p. 348, quoting Gov. Code, § 830, subd. (a); accord, *Garcia v. American Golf Corp.* (2017) 11 Cal.App.5th 532, 539.)

Grossman contends Education Code section 38134, subdivision (i)(1), creates a statutory waiver of sovereign immunity independent of government liability for a dangerous

---

[4]     Government Code section 835 provides that "a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:  [¶]  (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or  [¶]  (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

12

condition of public property under Government Code section 835. But this reading of section 38134 ignores subdivision (i)(2), which expressly provides that "[t]his subdivision does not limit or affect the immunity or liability of a school district . . . for an injury caused by a dangerous condition of public property." Because the school district's immunity and liability under the Government Claims Act are not limited or affected by section 38134, subdivision (i)(1), it follows that the school district's liability for negligence "in the ownership and maintenance of the school facilities or grounds" is limited to injuries caused by a dangerous condition of public property as defined by Government Code section 835.

Our interpretation of section 38134, subdivision (i), is consistent with the section's legislative history. In 1990 the Legislature passed Assembly Bill No. 3006 (1989-1990 Reg. Sess.), which added what is now section 38134, subdivision (i), to the Civic Center Act. (Former § 40043, subd. (h); Stats. 1990, ch. 377, § 1, pp. 1718-1720.) The state PTA advocated for passage of Assembly Bill No. 3006 because "'school districts around the state [had] been requiring their local PTA units to sign sweeping "hold harmless" agreements and/or name the school district as an "additional insured" on the PTA insurance policy in order to use school property for PTA events.'" (Sen. Com. on Judiciary, Analysis on Assem. Bill No. 3006 (1989-1990 Reg. Sess.) as amended Apr. 16, 1990, p. 2 (Sen. Com. on Judiciary, Analysis on Assem. Bill No. 3006); see Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 3006 (1989-1990 Reg. Sess.) June 25, 1990, p. 2 ["The purpose of this bill is to preclude school districts from requiring specified organizations which use school facilities to sign hold harmless agreements

which immunizes the school district from any liability for injuries occurring on the school grounds, including injuries resulting from the school district's negligence."].)

Assembly Bill No. 3006 codified a 1989 legal advisory opinion from the Superintendent of Public Instruction in response to a complaint from the PTA. (Sen. Com. on Judiciary, Analysis on Assem. Bill No. 3006, at pp. 2-3.) The advisory opinion concluded the "'hold harmless agreements, imposed by districts as a condition of school facility use, are impermissible to the extent that they require the PTA to assume liability for any claim "however caused" or "caused in any way" by the use of school facilities.'" (*Id.* at p. 3.) Further, "'a school district should not require the PTA to assume the cost of insuring against injuries caused by the negligent acts or omissions of the district, since that is a cost ordinarily borne by the district.'" (*Ibid.*)

The Senate Committee on Judiciary noted the advisory opinion was supported by the holding in *Ellis v. Board of Education* (1945) 27 Cal.2d 322, in which the Supreme Court acknowledged that a school district was improperly demanding users of its facilities to provide insurance protection to cover the school district as the owner or manager of the school property because "[t]he cost of that protection is a cost of maintenance and management" of the school's facilities.[5] (Sen. Com. on Judiciary, Analysis on Assem. Bill No. 3006, p. 3.)

---

[5]    In *Ellis*, the school district required an organization that requested use of a school auditorium to furnish public liability insurance naming the district as an insured. (*Ellis v. Board of Education, supra*, 27 Cal.2d at p. 324.) The Supreme Court held the insurance requirement violated the Civic Center Act, which required the school district to grant the organization use of the school property free of charge. (*Id.* at pp. 328-329.) The court

14

The committee explained the "key issue" was whether "the liability, cost of insurance, and cost of defense [should] be apportioned between school districts and organizations that use school facilities on the basis of the parties' respective responsibilities and fault." (Sen. Com. on Judiciary, Analysis on Assem. Bill No. 3006, p. 1.) The committee's report stated the bill would address this issue by holding school districts "liable for any injuries resulting from the negligent ownership, operation, or maintenance of the facilities or grounds," whereas "[g]roups using school facilities or grounds would be liable for any injuries resulting from the negligence of the group during use of the facilities or grounds." (*Id*. at p. 2.)

The Senate Committee on Judiciary was concerned the language in Assembly Bill No. 3006, making the school district "'liable for any injuries resulting from the negligence of the district in the ownership and management of those facilities or grounds,'" would broaden the school district's liability beyond Government Code section 835 and affect its absolute immunity

---

explained, "The policy required would not insure the school district against injury to the school building or other property of the school district, or against liability for injuries resulting from conduct of those attending or protesting the meeting for which [the school district] would not be responsible. It would insure the district only against liability for injuries to others arising out of the hazards incident to the school district's ownership and management of the building, schoolgrounds, and equipment. Such hazards would arise from the failure of the district to maintain the premises and equipment in a reasonably safe condition or to fulfill its duties in managing the property." (*Id*. at p. 327.)

under section 831.2.[6]  (Sen. Com. on Judiciary, Analysis on Assem. Bill No. 3006, pp. 3-4.)  The Senate responded by amending the bill to include the language now found in Education Code section 38134, subdivision (i)(2) (Ed. Code, former § 40043, subd. (h)), "to preclude the inadvertent broadening of school district liability."  (Sen. Com. on Judiciary, Analysis on Assem. Bill No. 3006, p. 4; see Amendment to Assem. Bill No. 3006 (1989-1990 Reg. Sess.) as amended April 16, 1990 ["Nothing in this subdivision shall be construed to limit or affect a school district's immunity or liability under provisions of the Government Code for injuries caused by a dangerous condition of public property."]; Concurrence in Senate Amendments to Assem. Bill No. 3006 (1989-1990 Reg. Sess.) as amended June 26, 1990, at p. 1 ["The Senate amendments provide that nothing in this bill shall be construed to affect a school district's immunity or liability under the Tort Claims Act, commencing with Government Code Section 810."  (Underscoring omitted.)].)

> 2.  *The school district was not liable for the booster group's use of the school grounds*

Grossman contends the school district breached its duty to use due care in the ownership and maintenance of its school

---

[6]  Government Code section 831.2 provides, "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property . . . ."  (See *Alana M. v. State of California* (2016) 245 Cal.App.4th 1482, 1488 ["The natural condition immunity applies even 'where the public entity had knowledge of a dangerous condition which amounted to a hidden trap.'"]; *Arroyo v. State of California* (1995) 34 Cal.App.4th 755, 762-764 [state had no duty to place warning signs about dangers of mountain lions in state park].)

16

grounds before and during the carnival, rendering it liable under section 38134, subdivision (i)(1). But Grossman's negligence claim is premised on the negligent set up and operation of the inflatable slide, not the negligent ownership and maintenance of school grounds. In his second amended complaint, Grossman alleged the slide was improperly set up on the grass infield adjacent to the concrete and the rope tethers at the top of the slide were not staked to the ground.[7] It is undisputed the school district did not plan, set up, operate, inspect, or supervise the carnival attractions, including the inflatable slide. Macklin selected the location of the inflatable slide; WOW Rental employees set up the slide on the day of the carnival; and a booster club parent volunteer operated the slide.

Grossman seeks to hold the school district liable for an injury resulting from the alleged negligence of the booster group "during the use of the school facilities or grounds," which is precisely the liability allocated under section 38134, subdivision (i)(1), to the booster group as the entity using the school grounds. As section 38134, subdivision (i)(1), makes clear, the "school district and the entity using the school facilities or grounds . . . shall each bear the costs of defending itself against claims arising from those risks." This would be a different case had Grossman

---

[7] We consider the allegations in the operative second amended complaint because it sets the boundaries of the issues to be resolved in a motion for summary judgment. (*Martine v. Heavenly Valley Limited Partnership* (2018) 27 Cal.App.5th 715, 725 [defendant "was not required to refute liability on theoretical issues not raised in the complaint"]; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 597 [defendant "was not required to refute liability on a theory not included in the operative complaint"].)

17

tripped on a negligently maintained sprinkler head on school grounds, which could be a dangerous condition if Grossman met the other requirements for liability under Government Code section 835.

Moreover, Grossman cannot establish the inflatable slide constitutes a "dangerous condition" of the school district's property under Government Code section 835. Grossman did not prove his injuries were caused either by an employee's negligence or that the school district had actual or constructive notice of a dangerous condition. (Gov. Code, § 835; *Hampton, supra*, 62 Cal.4th at pp. 347-348; *Cornette, supra*, 26 Cal.4th at p. 66.) Grossman argues a school district employee was negligent in failing to provide Macklin with the school district's Rules of Use prior to the carnival and, had Macklin been given the rules, the accident could have been avoided.[8] But nowhere in the Rules of Use did the school district require an inflatable slide be tethered to the ground or the user of the grounds perform safety inspections.

Instead, Grossman points to rules 7, 8, and 11 of the Rules of Use, none of which would have required the inflatable slide be tethered to the ground or inspected. Rule 8 provided, "No structures may be erected or assembled, nor may any electrical, mechanical, or other equipment be brought on school premises unless written approval has been obtained from the Facility

---

[8] The Rules of Use required a user of school facilities or grounds to sign and date an acknowledgement that "I have read and understand the above Rules of Use for Facilities." It is undisputed the school district did not provide Macklin with the Rules of Use until after the carnival.

Permit Office."[9]  Even if this requirement of prior approval applied to an inflatable slide,[10] Grossman did not show that compliance with the requirement for prior written approval would have resulted in the inflatable slide being tethered to the ground.  Indeed, the school district had provided its written approval for the booster group to use the school grounds for a carnival, which in prior years had included an inflatable slide.

There is likewise no merit to Grossman's argument the inflatable slide violated rule 11, which states, "There are to be no physical changes made to facilities or equipment."  As acknowledged by Grossman, the inflatable slide was only temporarily on the school grounds and was removed at the end of the carnival.  Thus, the inflatable slide did not constitute a physical change to the school facilities or equipment.[11]

---

[9]     Rules 7 and 11 appear on page one of the Rules of Use; rule 8 appears on a separately numbered Rules of Use at page 2.

[10]     Grossman's argument the inflatable slide was a "structure" that was "erected" on the school grounds ignores the fact the slide was not a building or something constructed on school grounds, but rather, was simply inflated.  (See, e.g., Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 1238, col. 2 [defining a structure as "something (as a building) that is constructed."]; Oxford English Dist. Online (2019) <https://en.oxforddictionaries.com/definition/structure> [as of Mar. 25, 2019] [defining a structure as "[a] building or other object constructed from several parts"].)

[11]     Grossman also argues rule 7 prohibited the use of any gas-powered generator on the campus.  However, Grossman only produced evidence that Macklin rented a generator from James Event, not that it was gas-operated, nor did he submit any evidence the generator in any way caused the accident.  Moreover, rule 7 is not directed at gas generators, instead

19

Alternatively, Grossman contends the school district had actual or constructive notice of a dangerous condition. Yet Grossman failed to present any evidence the school district was on actual or constructive notice the inflatable slide was not tethered to the ground or was otherwise dangerous. As noted, it is undisputed the school district did not plan, set up, operate, inspect, or supervise the inflatable slide. Prior to the accident, no one complained to the school district about the unsafe condition of the inflatable slide. In addition, the booster group had used a similar slide at the school carnival for the prior three years without injuries.

The trial court therefore properly granted summary judgment because there was no evidence the school district was negligent in the ownership and maintenance of its school facilities or grounds (§ 38134, subd. (i)). In addition, Grossman's injuries were not caused by a dangerous condition of the school district's property within the meaning of Government Code section 835. Because we affirm the trial court's grant of summary judgment on Grossman's negligence cause of action, we dismiss as moot the school district's cross-appeal from the trial court's finding it was equitably estopped from arguing lack of compliance with the Government Claims Act.

---

providing, "Skateboards, bicycles, roller skates/blades, scooters, electrical- or gas-powered devices may not be used on campus. They must be walked or carried."

## DISPOSITION

The judgment is affirmed.  The school district's appeal is dismissed as moot.  The school district shall recover its costs on appeal from Grossman.


FEUER, J.

WE CONCUR:


PERLUSS, P. J.


SEGAL, J.