Filed 5/4/18;  Certified for Publication 5/21/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN DOE, a Minor, etc., | F073934 |
| Plaintiff and Appellant, | (Super. Ct. No. S1500CV280615) |
| v. | |
| GOOD SAMARITAN HOSPITAL, | **OPINION** |
| Defendant and Respondent. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

Law Offices of Ralph B. Wegis, Ralph B. Wegis, Barry E. Rosenberg and Edward Gordon for Plaintiff and Appellant.

Lebeau • Thelen, Patrick Charles Carrick and Alan J. Mish for Defendant and Respondent.

-ooOoo-

## INTRODUCTION

Appellant alleges that he was sodomized by his roommate, K.W., while a patient in the adolescent psychiatric unit of respondent Good Samaritan Hospital Southwest (Hospital). He brought this action alleging that Hospital was negligent in placing K.W. in a room together with appellant, and limiting its efforts to supervise these patients to observation of each of them at 15-minute intervals, including not ordering one-on-one supervision. K.W.'s intake papers indicated that his hospitalization was involuntary, he recently had assaulted and injured his stepfather, and his younger siblings had to be protected from K.W. as a precaution.

Hospital brought a summary judgment motion, supported by a psychiatric nurse's expert declaration, on grounds that it did not breach its duty of professional care in any respect or contribute to appellant's injury in any way. The breadth of this conclusory opinion purportedly covers all aspects of Hospital's provision of care, and all of appellant's theories of liability, including the patients' admission and room assignments; Hospital's observations of the patients pursuant to its protocols and procedures; and its standards, plans and actions to generally supervise and ensure the safety of patients confined there for psychiatric treatment. Despite these multiple and complex issues, the nurse's declaration is little more than three pages long, does not differentiate between the issues, and predominantly contains ultimate facts and conclusions without underlying facts supported by evidence. Inasmuch as there are scant underlying facts, there also is no reasoned explanation by the expert as to how relevant facts and circumstances led to her conclusions.

Hospital's expert generally opined that Hospital satisfied the applicable standard of professional care by discharging the treating physician's medical recommendations for both patients, including that it performed observations of each of them at the physician's recommended 15-minute intervals, and concluded that one-on-one supervision was not warranted under the circumstances of the case. Appellant failed to qualify any of its witnesses as hospital experts, leaving Hospital's conclusory expert declaration

2.

unopposed. The trial court granted the summary judgment motion, finding that appellant did not provide admissible evidence in the form of expert testimony to challenge Hospital's expert opinion, and dismissed the case.

Appellant contends on appeal that its evidence should have been admitted on grounds that Hospital had an ordinary duty of care, or a professional duty independent of the physician's treatment recommendations, to protect its patients from physical harm during their hospital stay and treatment. If an ordinary duty applied, appellant would not require an expert. Appellant also contends that even if its claims sound in professional negligence, a layperson would understand issues concerning hospital safety based on common knowledge and without expertise. But, fundamentally, appellant contends that Hospital did not meet its burden as the moving party on summary judgment to foreclose relief on every theory of liability presented. After independently reviewing the record, we conclude that Hospital did not foreclose as a matter of law appellant's theories of negligence raised on appeal. Consequently, the burden did not shift to appellant to demonstrate the existence of a triable issue of material fact. Accordingly, even if appellant's evidence was properly excluded, summary judgment should not have been granted.

It is well settled that, where an expert declaration does not provide the facts upon which its conclusions are based and a reasoned explanation of how such facts led to the conclusions, it "does not establish the absence of a material fact issue for trial, as required for summary judgment." (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 524 (*Kelley*).)

Hospital's expert did not opine specifically as to the standard of care regarding room assignments and, consequently, did not dispose of this theory as a matter of professional negligence. The assignment of K.W. to appellant's room and Hospital's supervision of him are central theories of negligence here because of, among other things, the severity of the alleged injury and K.W.'s recent violent behavior. The declaration and record are devoid of meaningful information and explanation about who makes the room assignments and by what standards decisions are made. Consequently, the burden did not

3.

shift to appellant. Dr. Albert Ma testified as a nonexpert that he was responsible for medical treatment only and played no role in making room assignments, including that he did not make these. Accordingly, it does not appear from this record that the patients' room assignments were part of the physician's prescribed medical treatment plan, which Hospital contends it implemented in satisfaction of its duty. As a result, there is a question whether expert testimony was required to oppose the issue and the question remains open and disputed.

As to the theory of hospital safety and negligent supervision, Hospital argues that it satisfied its professional duties of care by discharging the doctor's orders to observe the patients at 15-minute intervals. By implication, Hospital contends that its duty was confined to doing so. The parties provided supplemental briefing on the legal issue of whether the scope of Hospital's duty to protect its patients from physical harm during treatment is broader than or independent of the medical treatment plan. Even assuming that there is authority to support appellant's position, however, the factual record is insufficient to conclusively determine the scope of Hospital's duties to supervise and keep its patients safe. Hospital's expert did not opine specifically or in any detail as to Hospital's applicable protocols and procedures regarding the safety and supervision of those confined there for treatment. Without any evidence of Hospital's standards and requirements, there is no basis on which to determine the standard of care, the scope of the duty, or conclude that Hospital complied in this case. Nor did the expert testify to any details of who performed the observations, what occurred at the observations or how long they lasted, rendering the conclusion that there was nothing to indicate the need for increased supervision specious. The absence of a meaningful, factual analysis by Hospital's expert precludes Hospital from affirmatively defeating the claim as a matter of law as it was required to do.

The law is clear that moving party's burden to show the absence of any genuine issue of material fact cannot be satisfied by an expert declaration consisting of ultimate facts and conclusions that are unsupported by factual detail and reasoned explanation,

4.

even if it is admitted and unopposed. Hospital did not foreclose as a matter of law each of appellant's three theories of negligence. Under these circumstances, summary judgment was not proper. In further proceedings below, as to the theories of negligent room assignments, patient supervision and hospital safety, the trial court will be required to determine the nature and scope of Hospital's duties, as well as whether expertise is required to establish applicable standards of care and whether they were breached, in accordance with the views expressed herein. We remand so that the trial court will have the benefit of relevant facts and we will not constrain its conclusions based on this record.

## FACTUAL BACKGROUND

"'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.'" (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716–717.) We consider all the evidence in the moving and opposing papers, except evidence to which objections were made and properly sustained, liberally construing and reasonably deducing inferences from appellant's evidence, and resolving any doubts in the evidence in appellant's favor. (*Id.* at p. 717; Code Civ. Proc., § 437c, subd. (c).)[1]

Appellant, a 12-year-old in the seventh grade, was voluntarily admitted to Hospital on November 1, 2012, due to suicidal and homicidal ideations. Specifically, he planned to hang himself with a belt due to issues at school. He also had a history of bipolar disorder and Asperger's disorder. The admitting doctor ordered that he be observed every 15 minutes and that precautions be taken to minimize his opportunity to harm himself or others. Hospital records confirm that appellant was observed by staff every 15 minutes during his stay.[2] Appellant remained at Hospital for nine days and, having shown improvement, was released to his parents on November 10, 2012.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] It is noted that the initial decision regarding the level of medical observation was made by the admitting physician checking one of three boxes on an "ADMITTING PHYSICIAN

5.

During his stay, Hospital assigned K.W. to share a room with appellant from November 5 to November 9, 2012. K.W., a 10-year-old male, was admitted on November 5, 2012, to Hospital based on a psychiatric hold. (See Welf. & Inst. Code, § 5150.) According to his initial psychiatric evaluation, K.W. was violent and his parents had moved his two- and three-year-old brothers into their room as a safety precaution. K.W. had assaulted his stepfather, causing injuries requiring medical attention. The intake doctor noted that K.W. had suicidal and homicidal ideations, was irritable, and lacked insight and judgment. Like appellant, the admitting physician ordered that K.W. be observed every 15 minutes, and records indicate that Hospital personnel performed the observations.

Appellant did not mention any problems during his stay at Hospital involving K.W., nor did Hospital's records indicate any issues. However, at some time unspecified in the record, after his discharge, appellant exhibited signs of posttraumatic stress disorder of which he eventually was diagnosed. He began to harbor a fear of contracting a sexually transmitted disease and to engage in inappropriate sexual behavior, which prompted serious concern about the level of psychiatric care appellant would require going forward. Roughly six months after his discharge, on April 30, 2013, appellant told his parents that K.W. sodomized him on the second night that they shared a room. Appellant's parents contacted law enforcement the same day. With regard to the incident, appellant explained that the door to their shared room was open, but K.W. took him into the bathroom, closed the door, and committed the sexual assault.

## PROCEDURAL BACKGROUND

Acting through a guardian ad litem, appellant filed a negligence lawsuit against Hospital on October 28, 2013. The complaint alleged that Hospital was negligent in its assessment of the patients, by housing appellant and K.W. in the same room, by limiting

ORDERS" form. The form included three boxes—one labeled "*Heightened* suicidal/homicidal precautions," another stating, "Every 15 minutes, until otherwise ordered by MD," and the final box labeled "Other."

6.

observation of K.W. to every 15 minutes, and failing to provide supervision of K.W. at all times.  On October 22, 2015, Hospital filed a motion for summary judgment, asserting that it did not breach its professional duty of care, nor was the Hospital's actions the legal cause of appellant's injuries.

In support of its motion, Hospital provided a declaration of Denise Rounds, a registered nurse familiar with the degree of learning and skill ordinarily possessed by nurses in psychiatric care in the state of California and the Central Valley.  Rounds indicated that Ma ordered observations of K.W. every 15 minutes on November 5, 2012, and never changed the level of observation during K.W.'s stay.  Likewise, Ma began seeing appellant on November 6, 2012, and maintained the level of observations of appellant at every 15 minutes.  Rounds further noted that appellant met with Ma every day starting on November 6, 2012, and appellant never reported any sexual assault, nor did the medical records show any change in the conduct or attitude of appellant that would make staff suspect that something inappropriate had occurred.

Rounds concluded that Hospital met its standard of care "regarding the medical care and treatment rendered to [appellant] which is the subject of the within litigation." She bases her expert opinion on "the medical records of [appellant] … for the hospitalization which is the subject of the litigation of November 1, 2012 through November 10, 2012 as well as selected records from [K.W.], a patient and roommate of [appellant] during the same hospital stay and the Bakersfield Police report."  Her review of the records indicated to her that the appropriate medical assessments and evaluations were performed.[3]

---

[3]     Appellant's complaint for medical malpractice and negligence contains allegations that refer to Hospital's physicians, the standard of care applicable to physicians, and negligence in the examination, diagnoses and treatment of patients.  In the summary judgment proceedings and on appeal, appellant argues that the 15-minute observation levels recommended by the physicians was inadequate and that constant, one-on-one supervision should have been ordered.  During oral argument, appellant's counsel clarified that he is not challenging the physicians on their medical diagnoses or treatment plan, including the order for observations at 15-minute intervals.  Further, appellant stated that respondent was not required to negate a theory

Rounds testified that Hospital could have performed one-on-one observations in which staff would be within arms-length of K.W., if needed, but there was no indication in this case that a higher level of observation other than the 15-minute intervals as ordered by the psychiatrist was necessary. Based on the protocol and procedures that were in place and followed by Hospital, Rounds opined that Hospital met its standard of care. Rounds's declaration does not identify or contain factual detail of any of Hospital's protocols and procedures or how they were complied with, who performed the observations, what was observed, or how long the observations lasted.

Appellant did not provide expert opinion to challenge Rounds's conclusions in his opposition to the summary judgment motion. Instead, appellant argued that his treating health care providers could provide evidence of the standard of care and presented deposition testimony of various percipient witnesses to rebut Rounds's declaration. Based on the evidence presented by the percipient witnesses, appellant argued that Hospital breached its standard of care by not assigning K.W. to one-on-one supervision and for housing K.W. and appellant as roommates.

On April 18, 2016, the trial court granted the summary judgment motion and entered judgment in favor of Hospital. Based on the expert opinion of Rounds, the court found that Hospital met its burden of proof regarding the standard of care of appellant and that no negligent act of Hospital caused appellant's injury. While the court agreed with appellant that Hospital staff may be qualified to present expert testimony as to the standard of care, however, appellant failed to provide any foundation regarding the witnesses' qualifications to testify as hospital experts. Accordingly, the court held that by failing to present any admissible expert testimony to contradict Rounds's opinion,

---

that the physicians breached the applicable standard of care in their diagnoses or orders. Respondent's counsel agreed with this understanding. Accordingly, we will not address the sufficiency of Rounds's expert opinion on the issue of physician malpractice.

appellant failed to meet his burden of raising a triable issue of fact and found in favor of Hospital.**4**

Appellant brought the instant appeal. Appellant contends that Hospital did not negate two theories of negligence alleged in the complaint and we agree.

## DISCUSSION

### I. Standard of Review

An order granting summary judgment is reviewed de novo. (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813 (*Biancalana*).) As a practical matter, "'we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.'" (*Simmons v. Superior Court* (2016) 7 Cal.App.5th 1113, 1124.) A motion for summary judgment is properly granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c); see *Biancalana*, *supra*, at p. 813.) "From commencement to conclusion, the moving party bears the burden of persuasion that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845, fn. omitted (*Aguilar*); accord, *GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1245.)

---

**4** The court specifically overruled the evidentiary objections presented by both parties, including appellant's objections that Rounds's declaration were argumentative, speculative, or cursory. By raising the objections below, the objections are not deemed waived under section 437c, subdivision (d); however, by not challenging the ruling on appeal, appellant failed to meet his burden of demonstrating that the trial court's overruling of his objections was error, as he does not discuss each objection or set forth legal argument or authority to support his challenge. (Cal. Rules of Court, rule 8.204(a)(1)(B) [each point must be supported by argument and, if possible, by citation to authority].) Appellant has therefore abandoned issues of the declaration's admissibility. (See, e.g., *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [failure to demonstrate how each evidentiary ruling was erroneous constitutes a forfeiture of challenge].) This does not, however, preclude him from arguing that the evidentiary value of the declaration is limited, as discussed at length herein.

Additionally, Hospital challenges the admissibility of a police report on appeal; however, the evidence included in the report is not relevant.

A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or show there is a complete defense to the plaintiff's cause of action. (§ 437c, subd. (p)(1), (2); accord, *Aguilar*, *supra*, 25 Cal.4th at p. 849.) It is not until the defendant meets this burden that the burden of production shifts to the plaintiff to show that a triable issue of one or more material facts exists as to the defense. (§ 437c, subd. (p)(2); accord, *Aguilar*, *supra*, at p. 850.) In conducting our review, we must identify the issues to be considered on the motion for summary judgment, which are defined by the pleadings. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) Significantly, as to each claim as framed by the complaint, """*the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading*.""" (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 848, italics added.)[5]

If an expert provides an opinion in support of a motion for summary judgment, he or she must provide the facts upon which the expert's conclusions are based. """[A]n expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion *has no evidentiary value* because an expert opinion is worth no more than the reasons and facts on which it is based. [Citations.]" [Citation.]'" (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 530, italics added.) "[A]*n opinion unsupported by reasons or explanations does not establish the absence of a material fact*

---

[5] As explained by the California Supreme Court, how a party moving for or opposing summary judgment satisfies its burden of production or persuasion "depends on *which* would bear *what* burden of proof at trial." (*Aguilar*, *supra*, 25 Cal.4th at p. 845.) "Thus, if a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would *require* a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to summary judgment *as a matter of law*, but would have to present his evidence to a trier of fact. By contrast, if a defendant moves for summary judgment against such a plaintiff, he must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not—otherwise, *he* would not be entitled to judgment *as a matter of law*, but would have to present *his* evidence to a trier of fact." (*Id.* at p. 851, fn. omitted.)

10.

*issue for trial, as required for summary judgment.*" (*Kelley*, *supra*, 66 Cal.App.4th at p. 524, italics added.)

We conduct an independent review of the record, considering all the evidence set forth in the moving and opposition papers, except evidence to which objections were made and properly sustained by the trial court, and all inferences reasonably drawn from the evidence. (§ 437c, subd. (c).) We view the evidence in the light most favorable to the party opposing summary judgment, liberally construing the opposing party's submissions and resolving all doubts concerning the evidence in favor of the opposing party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) "We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 637.) However, the standards applicable to appellate review of a summary judgment are "'far different from the … substantial evidence test that often governs on appeal'" so that, even if a trial court's evaluation of the evidence is reasonable, "'summary judgment cannot properly be affirmed unless a contrary view would be unreasonable as a matter of law .…'" (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 877.)

Accordingly, Hospital's burden was to show that there is no factual basis for relief on any theory reasonably contemplated by appellant's pleadings.

**II. Hospital Failed to Present a Complete Defense to Every Theory of Liability or To Demonstrate No Factual Basis for Recovery**

Hospital presented an unrebutted expert opinion in support of its motion for summary judgment. However, even if appellant did not present competing expert testimony, it remained Hospital's burden to establish a complete defense or otherwise show there was no factual basis for relief on any theory presented by appellant. (*Eriksson v. Nunnink*, *supra*, 191 Cal.App.4th at p. 848.) Appellant correctly notes that if multiple theories are pled, "'the defendant has the burden of demonstrating there are no material facts requiring trial on any of them.'" (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 163.) Hospital does not contend otherwise.

This case is analogous to *Kelley*, *supra*, 66 Cal.App.4th 519 and *Johnson* v. *Superior Court* (2006) 143 Cal.App.4th 297, 307 (*Johnson*). In *Kelley*, the patient developed serious complications (including neurological damage and scarring requiring skin grafts) after being treated for a laceration on his arm. (*Kelley*, *supra*, at p. 521.) The patient called one of his doctors twice after the treatment, complaining about his pain. The doctor prescribed more pain medication, but did not inquire about the patient's symptoms or suggest he seek immediate medical care. (*Ibid.*) The doctor referred the patient to his primary care physician, who saw the patient within several days, but he had already suffered significant damage. The doctor moved for summary judgment, submitting a cursory expert declaration of another doctor, who, after reviewing the medical records and relating the patient's treatment stated, "'[a]t all times … [the treating physician] acted appropriately and within the standard of care under the circumstances presented.'" (*Id.* at p. 522.)

The court held the declaration was not admissible since it did not disclose the matter relied upon in forming the opinion, but ruled that the deficiency was waived by the plaintiff's failure to object. (§ 437c, subd. (d); see *Kelley*, *supra*, 66 Cal.App.4th at p. 524.) Even though the declaration was admitted, the court held that the expert opinion did not establish the absence of a material fact because it was "unsupported by reasons or

12.

explanations .…" (*Kelley*, *supra*, at p. 524*.*)  The court described specific questions relevant to the medical scenario there that should have been addressed in the expert opinion such as the cause of the complications, whether signs of the complications would have been observable by the physicians had they examined the plaintiff, whether a reasonable physician would recognize the possibility of severe complications, and whether earlier intervention would have mitigated the plaintiff's injury.  (*Ibid.*)  The court explained that the summary judgment standard "is not satisfied by laconic expert declarations which provide only an ultimate opinion, unsupported by reasoned explanation."  (*Id.* at p. 525; see *Wilkinson v. Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 498, fn. 3 ["'[T]he expert's [medical] opinion must rest upon relevant facts and must consist of something more than a legal conclusion.'"])  Specifically, the *Kelley* court explained such a conclusory declaration "does not establish the absence of a material fact issue for trial, as required for summary judgment."  (*Kelley*, *supra*, at p. 524.)

In *Johnson*, the doctors treated the plaintiff's prostate cancer by placing radioactive material in his prostate gland.  (*Johnson*, *supra*, 143 Cal.App.4th at pp. 299–300.)  However, the defendant doctors implanted too much radioactive material, thereby damaging surrounding tissue and necessitating a colostomy, bladder removal, and other related procedures.  (*Id.* at p. 300.)  The plaintiff brought a medical malpractice action and the physicians filed for summary judgment.  (*Id.* at pp. 299–300.)  In *Johnson*, both parties presented competing expert declarations.  (*Id.* at pp. 300–302.)  However, the court focused on the defendants' declaration, which provided no detail as to the standard of care regarding the amount of radioactive material to use during such a procedure and, therefore, failed to provide factual data on which its opinion was based.  (*Id.* at p. 308.)  Having found the expert opinion conclusory, the court held that it was insufficient to establish the nonexistence of a triable issue of material fact, and that the defendants as moving parties failed to meet their initial burden on summary judgment.  (*Ibid.*)

13.

Appellant claims that Hospital did not address that it was negligent for placing appellant in the same room as K.W., and for not having full-time, one-on-one supervision or otherwise ensuring the patients were safe. Hospital contends that all theories as to its alleged breach of the standard of care are facets of the same claim and, therefore, relies on Rounds's declaration as foreclosing all factual issues on all Hospital matters concerning these two patients on grounds that Hospital discharged the doctor's orders. However, there are factual gaps and disputes in the record that are material and prohibit a conclusion that Hospital defeated appellant's claims as a matter of law.

In his complaint, appellant states that Hospital "failed to use the level of skill, knowledge, and care in the supervision, control, treatment, caretaking and reporting of a minor male child/patient in [Hospital's] control … that other reasonably careful practitioners would have used in similar circumstances"; that Hospital "negligently and carelessly continued to employ, supervise, oversee, restrict, maintain or control such patient activities by allowing said patients to room together in bedrooms which left them alone together while unsupervised"; and that Hospital "negligently and carelessly continued to supervise, oversee, restrict, maintain or control [K.W.'s] activities so as not to place him with any other minor." Further, the complaint specifically alleged negligence arising from housing K.W. with other patients. The complaint states that Hospital "knew or should have known that patient bedrooms are known as potential trouble spots due to lack of visibility because they are obstructed from view of hospital staff," and that Hospital was "allowing said patients to room together in bedrooms which left them alone together while unsupervised."

The declaration does not specifically describe the standard of care or, for that matter, if there were different standards of care for different portions of Hospital's psychiatric care of appellant. "[T]he standard of care determines … the minimum level of care to which the patient is entitled." (*Alef v. Alta Bates Hospital* (1992) 5 Cal.App.4th 208, 215.) Rounds states in her declaration that "the standard of care was met by [Hospital] at all times during the care and treatment of [appellant]." Without any

14.

elaboration regarding the applicable standard of care and what conduct was required to meet it, the expert declaration is legally insufficient.

For example, the declaration does not set forth the standard of care that would apply to the assessment and determination of the proper observation level for a particular patient. The declaration is silent as to the precise or principal purpose(s) of the observations recommended by the physicians or an explanation of whether and how the recommended observations define the scope of Hospital's duty to supervise. Does such an assessment involve a medical evaluation by a certified psychologist or psychiatrist using standardized protocols regarding the level of dangerousness of the patient? Does Hospital have additional protocols or procedures in place regarding assessments for observation levels? Are there industry standards? The only factor Rounds refers to in concluding that increased observations were not required was because "[t]here was no prior knowledge of any physical or sexual abuse of [K.W.] that would place the hospital on a higher state of alert." Rounds presents no explanation why prior knowledge of physical or sexual abuse of K.W. was the only factor that would influence the level of observation. It is evident that other indicators would also be relevant, and possibly more important to the determination, such as K.W.'s conduct and propensity towards violence or assaultive behaviors at the time he was admitted as a patient at the facility, matters not addressed in Rounds's declaration.

Similarly, with regard to whether Hospital breached its standard of care generally to supervise and care for appellant and K.W., Rounds contends that the standard was met because Hospital performed the 15-minute interval observations, that there was no evidence or circumstances that required Hospital to increase its level of supervision, and that the protocol and procedures in place by Hospital were followed. Beyond 15-minute interval observations and a general reference to Hospital's protocols and procedures, Rounds provided no information. Did Hospital maintain its own policies and procedures for supervision of adolescent psychiatric patients? If not, are there other policies or guidelines that have been accepted as delineating the standard of care in the field? Based

15.

on those policies and procedures, were there additional steps that Hospital should have taken during its supervision of appellant and K.W.? For example, evidence was presented that, absent one-on-one constant supervision, patients could go into the bathroom and close the door and not be subject to supervision. Would it violate protocols and procedures to allow all patients to spend unsupervised time in the bathroom? Without any description of Hospital's protocols and procedures, there is no basis on which to determine the standard of care. And without any facts as to the observations, there is no basis on which to determine whether those procedures were followed and, if not, whether that breached Hospital's duty of care.

Hospital's expert opinion is devoid of any discussion regarding the decision to assign K.W. to room with other patients, who makes the room assignments or how they are made. Nor does the expert provide any of Hospital's safety protocols or procedures as they may relate to room assignments. Is the threat of harm to another patient the only factor in determining how to house patients in a psychiatric hospital? If not, what are the other factors and are they equally important? What factors were considered in assigning K.W. to appellant's room? Accordingly, Hospital has not established the standard of care with regard to assigning patients to rooms and whether Hospital breached that standard of care. Under these circumstances, Hospital did not prove there was no factual bases for appellant's claims or that it defeated the claims as a matter of law.

Without the benefit of knowing Hospital's policies, protocols or procedures regarding patient safety and supervision, we may only speculate as to the standard of care and what may have been required during the observations or other supervision. And without the benefit of any facts, we cannot determine whether the standard of care was satisfied as a matter of law. It was Hospital's burden on summary judgment to show that no factual basis exists to support appellant's negligence theories. This burden cannot be met by presenting a declaration with no significant evidentiary value.

III.    **Negligence Theories and Evidence**

Appellant contends that his evidence should have been admitted in the proceedings below because, contrary to the trial court's ruling, expertise was not required on the issues of room assignment, patient supervision, or general patient safety. Rather, appellant argues that these are matters of ordinary negligence or are within the common knowledge of a layperson, and an expert is not required in either of those circumstances. Inasmuch as we have determined that summary judgment was not proper because Hospital's expert declaration was inadequate, we do not reach the propriety of the trial court's exclusion of appellant's evidence.

We leave it to the trial court on remand to make determinations on whether each Hospital safety issue implicates an ordinary or professional duty and, if professional, whether the common knowledge exception applies.[6]

---

[6] We thank the parties for addressing *Martin v. United States* (E.D.Cal. July 5, 2017, No. 2:14-cv-02214-TLN-KJN) 2017 U.S. Dist. Lexis 104597 (*Martin*), a case that was decided after briefing was completed in this appeal and addressed by the parties in supplemental briefing. Given our disposition in this matter, the trial court will be required to determine any questions the parties may raise concerning that case's application and effect here.

17.

## DISPOSITION

The judgment is reversed. The trial court is directed to withdraw its order granting summary judgment, and to enter an order denying Hospital's motion for summary judgment. Appellant is to recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____
MEEHAN, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
FRANSON, J.

Filed 5/21/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN DOE, a Minor, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> GOOD SAMARITAN HOSPITAL, <br><br> Defendant and Respondent. | F073934 <br><br> (Kern Super. Ct. No. S1500CV280615) <br><br><br> **ORDER GRANTING REQUEST FOR PARTIAL PUBLICATION** |

It appearing that part of the nonpublished opinion filed in the above entitled matter on May 4, 2018, meets the standards for publication specified in California Rules of Court, rule 8.1105(c), IT IS ORDERED that the opinion be certified for publication in the Official Reports with the exception of part III. of the Discussion.

MEEHAN, J.

WE CONCUR:

LEVY, Acting P.J.

FRANSON, J.