Filed 1/31/25; Certified for Publication 2/27/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SABRINA ZARAGOZA,<br><br>　　　　Plaintiff and Appellant,<br>v.<br>NADIR ADAM, M.D.,<br><br>　　　　Defendant and Respondent. | A168100<br><br>(San Francisco County<br>Super. Ct. No. CGC21591784) |

　　　　Plaintiff Sabrina Zaragoza appeals from the summary judgment entered in favor of defendant Dr. Nadir Adam in this action for medical malpractice.  Plaintiff contends Dr. Adam was not entitled to summary judgment because his medical expert failed to provide a reasoned explanation for his opinions that Dr. Adam did not negligently perform gallbladder removal surgery on plaintiff or cause her injuries.  We agree and reverse the summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

　　　　Plaintiff was admitted to Mercy Medical Center Merced complaining of abdominal pain, and she was discharged the next day.  She returned to the hospital three days later complaining of abdominal pain.

　　　　A hepatobiliary iminodiacetic acid scan indicated plaintiff had a bile leak.  Dr. Satnam Uppal performed a procedure on plaintiff called an endoscopic retrograde cholangiopancreatography ("ERCP").  According to

1

plaintiff's medical records, the ERCP was "UNSUCCESSFUL," as Dr. Uppal was "unable to cannulate the common bile duct for stent placement."

Plaintiff was transferred to Memorial Medical Center, where Dr. Shirley Domingo diagnosed plaintiff with a perforated viscus but could not identify the location of the bile leak. Dr. John Koo performed a staged laparotomy and abdominal washout and reported that "[a]ttempts made to assess the duodenum, gallbladder fossa, or right upper quadrant in general were unsuccessful."

Dr. Brent Izu performed a "[r]eopening of [the] recent laparotomy." Dr. Izu reported that "[t]he small intestine was examined and found to be intact. The gallbladder fossa was inspected and the cystic duct and artery clips were identified without any evidence of leakage. The small bowel mesentery was noted to be leaking bile. Murky bilious fluid was encountered and suctioned. The duodenum was mobilized and no evidence of injury was noted." A few days later, Dr. Izu performed another reopening of the laparotomy and a transcystic cholangiogram and found "retrograde filling of cystic duct and hepatic duct, but no visualization of common bile duct."

Plaintiff's condition worsened, and she underwent additional surgeries to treat the bile leak and related complications, including bile peritonitis.

**A. Complaint**

Plaintiff filed the instant action against Dignity Health doing business as Mercy Medical Center Merced, Dignity Health Medical Group–Merced, Dr. Adam, and Dr. Uppal. The complaint asserted a single cause of action for medical negligence alleging that "defendants, and each of them, were careless and negligent in and about their evaluation, treatment, obtaining informed consent, laboratory testing, nursing care, observation, surgical care,

2

monitoring and diagnosis of [plaintiff] during the course of her treatment as a patient at Mercy Medical Center Merced."

**B. Motion for Summary Judgment**

Dr. Adam moved for summary judgment, arguing plaintiff could not establish a triable issue of material fact that he provided negligent care to her or caused her injuries. In support, Dr. Adam submitted the declaration of Dr. Eric Morse, a licensed general surgeon he retained to provide an expert opinion on the quality of care he provided to plaintiff. Dr. Adam also submitted the declaration of his counsel, Thomas Perry, attaching over 1,000 pages of plaintiff's medical records that Perry provided to Dr. Morse.

Based on his review of plaintiff's medical records, Dr. Morse offered the following statements and opinions: (1) plaintiff was an appropriate candidate for the cholecystectomy performed by Dr. Adam; (2) plaintiff consented to the procedure after Dr. Adam explained the recognized risks of injury, including injury to the bowel or bile duct, with possible bile leak; (3) the cholecystectomy was performed by Dr. Adam "without apparent complication" and "within the standard of care expected of a general surgeon performing this surgery"; (4) a bile leak is "a recognized risk of cholecystectomy" and "is a relatively minor complication" that "can occur even when the procedure is performed with due care by the surgeon. In this case the bile leak was not due to any negligence or inappropriate surgical technique on the part of Dr. Adam"; (5) in most circumstances, an ERCP allows a bile leak to resolve and the patient has no further complications," but "in this case, the ERCP was not successful," as "the procedure note by Dr. Uppal . . . indicated that the procedure was 'incomplete,'" and "[s]ubsequent medical records confirmed that the attempted ERCP procedure resulted in a retroperitoneal duodenal perforation. The duodenum is part of the small

intestine, also referred to as the bowel. In short, the attempt to perform the ERCP resulted in a perforated bowel. This is a serious complication. It allowed the abdominal cavity to be contaminated, resulting in infection and sepsis." Dr. Morse concluded that the attempted ERCP by Dr. Uppal "set off a cascade of ongoing medical complications, hospitalizations, additional surgeries, and other procedures," and plaintiff's resulting injuries and disabilities were caused by the bowel perforation from the ERCP, not the bile leak from Dr. Adam's cholecystectomy."

In opposition to the motion, plaintiff argued that Dr. Morse's declaration was inadmissible and insufficient to satisfy Dr. Adam's initial burden because Dr. Morse failed to provide a reasoned explanation for his opinions. Plaintiff did not submit an opposing medical expert declaration.

With his reply papers, Dr. Adam submitted a further declaration from attorney Perry attaching additional medical records, transcript excerpts from the deposition of Dr. Izu, and a copy of plaintiff's responses to special interrogatories served during discovery in this case. Plaintiff objected to the reply evidence.

### C. Decision and Judgment

After a hearing, the trial court issued its order granting Dr. Adam's motion for summary judgment. The court began by sustaining plaintiff's objection to Dr. Adam's reply evidence. Then, after setting forth the governing authorities on summary judgment, the court overruled plaintiff's objections to Dr. Morse's expert declaration, concluding that under *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493 (*Bushling*), Dr. Morse provided a sufficient basis for his opinions by stating he had reviewed plaintiff's medical records and found that Dr. Adam performed the cholecystectomy within the standard of care expected of a general surgeon.

4

Noting that plaintiff presented no opposing expert declaration to create a triable issue of fact, the court granted Dr. Adam's motion for summary judgment.

Plaintiff timely appealed from the ensuing judgment.

## DISCUSSION

"A party may move for summary judgment in an action or proceeding if it is contended that the action has no merit." (Code Civ. Proc., § 437c, subd. (a)(1).) A defendant can meet its burden by showing "that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (*Id.*, subd. (p)(2).)

On an appeal from summary judgment, we review the record de novo and "apply the same three-step analysis as the trial court. [Citation.] 'First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 967.) We accept as true the facts in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them, viewing the evidence in the light most favorable to the opposing party, and liberally construing that party's evidentiary submissions, while strictly scrutinizing the moving party's evidence. (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253–254.) "[A]ny doubts about the propriety of summary judgment must be resolved in favor of the opposing party." (*Richards v. Sequoia Ins. Co.* (2011)

195 Cal.App.4th 431, 435.) We consider "all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." (*Grossman v. Santa Monica-Malibu Unified School Dist.* (2019) 33 Cal.App.5th 458, 465 (*Grossman*).)

Where, as here, the material issues framed by the complaint are whether the conduct of a medical professional fell below the standard of care and proximately caused the plaintiff's injury, expert testimony is required to establish the reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of the medical profession under similar circumstances (*McAlpine v. Norman* (2020) 51 Cal.App.5th 933, 938 (*McAlpine*)), as well as whether the defendant's conduct proximately caused the plaintiff's injuries within a reasonable medical probability (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402).

"[T]he opinion of any expert is only as good as the facts and reasons on which it is based" (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 633), and the trial court " 'properly act[s] as a gatekeeper to exclude speculative expert testimony' " (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 188 (*Garrett*)). In arguing that the trial court did not err in granting summary judgment based on Dr. Morse's declaration, Dr. Adam cites the standards governing the admissibility of expert opinion testimony and contends that because Dr. Morse's declaration statements would be admissible at trial, they were properly admitted in support of summary judgment. We may accept for the sake of argument that Dr. Morse's declaration was properly admitted, but this is not dispositive of whether the declaration was sufficient to carry Dr. Adam's burden as the party moving for summary judgment. A moving defendant's "burden to show the absence of any genuine issue of material fact cannot be satisfied by an

6

expert declaration consisting of ultimate facts and conclusions that are unsupported by factual detail and reasoned explanation, even if it is admitted and unopposed." (*Doe v. Good Samaritan Hospital* (2018) 23 Cal.App.5th 653, 657 (*Good Samaritan*).)

*McAlpine* is instructive. There, the plaintiff reported abdominal pain after a colonoscopy and was eventually diagnosed with a perforation of her colon and inflammation of the peritoneal cavity caused by infection. (*McAlpine*, *supra*, 51 Cal.App.5th at pp. 935–936.) She sued the physician who performed the colonoscopy (Dr. Norman) for professional negligence, and Dr. Norman moved for summary judgment based on the declaration of a gastroenterology expert (Dr. Cello). (*Id.* at p. 936.) The plaintiff opposed the motion, arguing that Dr. Norman failed to meet his initial burden for summary judgment; she did not, however, submit a declaration from an opposing expert. (*Id.* at p. 937.)

Reversing the trial court's grant of summary judgment, *McAlpine* held that Dr. Cello's declaration "amount[ed] to little more than a bare statement that McAlpine's treatment was within the standard of care. It does not elaborate or explain why Norman's treatment was within the standard of care, except to suggest that a perforation is a 'known risk of colonoscopy,' of which McAlpine was aware, having signed an informed consent form before the procedure. Norman's position appears to be that since a perforated colon is a known risk of the procedure, the perforated colon suffered by McAlpine necessarily was within the standard of care. This does not follow." (*McAlpine*, *supra*, 51 Cal.App.5th at pp. 940–941.)

The same can be said for Dr. Morse's declaration in this case. Dr. Morse concluded, based on his review of plaintiff's medical records, that Dr. Adam performed the cholecystectomy "within the standard of care expected of

a general surgeon performing this surgery," but critically, he did not elaborate or explain the basis for this conclusion. For instance, Morse did not explain what acts constitute due care when performing a cholecystectomy, particularly as they relate to avoiding or preventing a bile leak. Morse also concluded, without adequate explanation or elaboration, that plaintiff's bile leak "was not due to any negligence or inappropriate surgical technique on the part of Dr. Adam." To the extent Dr. Morse offered this conclusion based on the premise that a bile leak is a recognized and relatively minor complication of a cholecystectomy that can occur "even when the procedure is performed with due care," his conclusion "does not follow" (*McAlpine*, *supra*, 51 Cal.App.5th at p. 941) because he did not explain how he ruled out a negligent cause for the bile leak in this case.

Instead, Dr. Morse attempted to attribute plaintiff's injuries and complications to a bowel perforation purportedly caused by Dr. Uppal during the ERCP. But setting aside for now its adequacy and admissibility, this particular opinion simply does not tend to prove the absence of negligence by Dr. Adam in performing the cholecystectomy that led to the bile leak. Furthermore, and in any event, we conclude Dr. Morse did not provide a reasoned explanation for his opinion that Dr. Uppal's performance of the ERCP caused a bowel perforation. Although Dr. Morse cited a medical record indicating the ERCP was " 'incomplete,' " he did not explain how Dr. Uppal's inability to complete the procedure caused a bowel perforation that led to plaintiff's complications. Dr. Morse also stated in conclusory fashion that "[s]ubsequent medical records confirmed that the attempted ERCP procedure resulted in a retroperitoneal duodenal perforation," but he identified no specific medical records among the more than 1,000 pages he reviewed to support his conclusion. Nor did he explain how the unspecified records

8

"confirmed" that the bowel perforation was the result of the ERCP. As such, Dr. Morse neither adequately explained his opinions as to the cause of the bowel perforation nor "disclose[d] the matter relied on in forming the opinion expressed." (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 524 (*Kelley*).)

Dr. Morse's declaration was also insufficient to show the absence of a triable issue on causation. " 'Like breach of duty, causation also is ordinarily a question of fact which cannot be resolved by summary judgment. The issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion.' " (*Lawrence v. La Jolla Beach & Tennis Club, Inc.* (2014) 231 Cal.App.4th 11, 33.) Here, Dr. Morse concluded that plaintiff's "injuries and disabilities were caused by the bowel perforation from the ERCP, not the bile leak from Dr. Adam's cholecystectomy." As discussed, however, Dr. Morse's opinions in this regard were conclusory, and furthermore, he did not state to a reasonable medical probability that the ERCP, rather than Dr. Adam's actions, was the sole cause of plaintiff's complications and injury.

Strictly scrutinizing Dr. Adam's evidence, as we must, we conclude Dr. Morse failed to support his opinions with sufficient factual detail and reasoned explanation to show the absence of a triable issue of material fact. (*McAlpine, supra,* 51 Cal.App.5th at pp. 939–940; *Good Samaritan, supra,* 23 Cal.App.5th at p. 657.)

Dr. Adam complains that *Good Samaritan* and *McAlpine* require "an unrealistic level of explanation," and that under *Hanson v. Grode* (1999) 76 Cal.App.4th 601, 608, fn. 6 (*Hanson*), there is no obligation for experts to provide "excruciating" detail on the medical records used to support their opinions on summary judgment. But notably, *Hanson* involved the sufficiency of an expert declaration submitted in *opposition* to a summary

9

judgment motion. (*Hanson*, at pp. 606–608.) Such evidence is evaluated under the rule of liberal construction and "need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion." (*Garrett*, *supra*, 214 Cal.App.4th at p. 189.) Thus, Dr. Adam's reliance on *Hanson* is misplaced. We also disagree that *McAlpine* and *Good Samaritan* hold parties moving for summary judgment based on expert declarations to an "unrealistic" standard, as those decisions simply require a reasoned explanation beyond mere conclusory statements. (See *McAlpine*, *supra*, 51 Cal.App.5th at pp. 940–941; *Good Samaritan*, *supra*, 23 Cal.App.5th at pp. 664–666.)

Dr. Adam further contends Dr. Morse's declaration was sufficient under *Bushling*, *supra*, 117 Cal.App.4th 493. Specifically, Dr. Adam highlights the following remarks by the *Bushling* court: "To state that one has experience in certain medical procedures and has reviewed pertinent medical records and that based on that experience and that review, the declarant has found nothing to support a claim of medical malpractice and therefore concludes that there was none is not an improper conclusion for an expert witness. The expert has given an explanation for that expert's conclusion that defendants are not guilty of medical malpractice: Based on the expert's experience and the patient's medical records, there is no evidence to support a claim of negligence as a cause of injury. The reason for the opinion is the absence of evidence of medical malpractice." (*Id.* at p. 509.) From this, Dr. Adam maintains that Dr. Morse's opinion was "appropriately stated under the *Bushling* standard." We are not persuaded that *Bushling* supports the trial court's decision below.

In *Bushling*, the plaintiff underwent surgery to remove his gallbladder and to biopsy a mole on his abdomen. He later sued the medical center and

two physicians (Drs. Caruso and Rosson) for medical malpractice claiming they caused an injury to the plaintiff's shoulder either during the surgery or on his way to or from the operating room. (*Bushling*, *supra*, 117 Cal.App.4th at p. 497.) Caruso and Rosson each moved for summary judgment, submitting their own declarations stating that nothing occurred during plaintiff's surgery or transportation to or from the operating room that caused the shoulder injury. (*Id.* at pp. 498–499.) They also submitted excerpts from the deposition of the physician who performed surgery on plaintiff's shoulder, Dr. Weber, who testified that he found nothing consistent with a traction or trauma injury, and that based on reasonable medical probability, plaintiff's injury was " 'idiopathic,' " which " 'means there usually is no cause.' " (*Id.* at pp. 499, 500.) Lastly, the defendants each submitted declarations from medical experts who opined, based on their experience and review of pertinent medical records (and, in the case of Caruso's expert, the deposition testimony of Dr. Weber) that Caruso and Rosson met the applicable standard of care and did not cause plaintiff's shoulder injury. (*Id.* at pp. 498, 500.)

Highlighting all of the evidence described above, the *Bushling* court rejected the plaintiff's argument that the declarations of Rosson and the two experts were "conclusory and thus insufficient to establish a prima facie case for the defense." (*Bushling*, *supra*, 117 Cal.App.4th at p. 509.) The court first remarked it was "not conclusory for Dr. Rosson to describe his treatment of plaintiff and state that he was not negligent." (*Ibid*.) The court likewise held the expert declarations were not too conclusory, highlighting in particular that one of the experts based their conclusions not only on the plaintiff's medical records but "also on the deposition testimony of Dr. Weber" that the plaintiff's shoulder injury was, to a reasonable medical probability,

idiopathic. (*Ibid.*) Accordingly, and because appellate courts consider all of the admitted evidence in reviewing a summary judgment ruling (*Grossman*, *supra*, 33 Cal.App.5th at p. 465), we may reasonably assume the *Bushling* court evaluated the sufficiency of the expert declarations to establish a prima facie case for the defense together with the other evidence flagged by the expert that tended to show that the plaintiff's shoulder injury was not caused by the defendants. Here, in contrast, Dr. Morse offered a conclusory declaration without identifying what he perceived as the relevant facts reflected in the medical records or otherwise elucidating the factual bases for his conclusions. On this record, *Bushling* is distinguishable and does not control.

Dr. Adam suggests that the reason Dr. Morse did not offer a more detailed declaration is because plaintiff never articulated a specific factual basis for Dr. Adam's liability, and that when pressed to do so during discovery, plaintiff responded to Dr. Adam's contention interrogatories with meritless objections that the interrogatories required an expert opinion. Dr. Adam argues it is "patently unfair and prejudicial" to require him "to address any possible theory of negligence that may exist . . . when [plaintiff] failed to identify even a single theory of negligence." Although we are not wholly unsympathetic to Dr. Adam's predicament, we remain unpersuaded. Because "negligence may be pleaded in general terms . . . without stating the particular omission which rendered it negligent," plaintiff was not required to allege any particular negligent conduct by Dr. Adam in order to state a viable claim for negligence that would serve to frame the issues for summary judgment. (*McAlpine*, *supra*, 51 Cal.App.5th at p. 941, fn. 4.)

Dr. Adam's argument regarding plaintiff's interrogatory responses is likewise unavailing. As a threshold matter, the trial court sustained

12

plaintiff's objection to the reply declaration attaching the discovery responses in question, and Dr. Adam does not contend the court abused its discretion in so ruling. Accordingly, that evidence is not properly before us. (See *Grossman, supra,* 33 Cal.App.5th at p. 465.) In any event, Dr. Adam cites no authority supporting the conclusion that plaintiff's refusal to provide a substantive response to contention interrogatories relieved Dr. Adam of his obligation to submit a reasoned expert opinion in order to satisfy his initial burden on summary judgment.[1]

## DISPOSITION

The judgment is reversed with directions to vacate the order granting summary judgment and to enter a new order denying summary judgment. Plaintiff is entitled to her costs on appeal.

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P. J.

_____
Petrou, J.

*Zaragoza v. Dignity Health* (A168100)

---

[1] Though an opposing party's factually devoid discovery responses may support a moving party's initial burden on summary judgment (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590), the assertion of objections, even meritless ones, does not give rise to a logical inference that the responding party lacks supporting facts to respond. (See *Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 892–893.)

13

Filed 2/27/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| SABRINA ZARAGOZA,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>NADIR ADAM, M.D.,<br><br>     Defendant and Respondent. | A168100<br><br>(San Francisco County<br>Super. Ct. No.CGC21591784) |

BY THE COURT:†

    The opinion in the above-entitled matter, filed on January 31, 2025, was not certified for publication in the Official Reports. The court has received requests for publication of the opinion by the Orange County Trial Lawyers Association, the Consumer Attorneys of California, and appellant Sabrina Zaragoza. For good cause, the requests for publication are granted.

    Pursuant to California Rules of Court, rules 8.1120 and 8.1105(c)(2), the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.


Dated: 02/27/2025          Tucher, P.J._____
                                   Presiding Justice

---

† Tucher, P.J., Fujisaki, J., and Petrou, J.

Trial Court:      San Francisco County Superior Court

Trial Judge:      Hon. Richard Ulmer, Jr.

Counsel:          Esner, Chang, Boyer & Murphy, Andrew N. Chang;
                  Andrew J. Kopp, P.C., Andrew J. Kopp for Plaintiff and
                  Appellant

                  Kroloff, Belcher, Smart, Perry & Christopherson, Thomas
                  Owen Perry, Courtney Sarah Hayes and Kelsea A.
                  Carbajal for Defendant and Respondent

*Zaragoza v. Dignity Health* (A168100)