Filed 10/24/23  Nunez v. 4 Earth Farms CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JESUS NUNEZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>4 EARTH FARMS, LLC,<br><br>Defendant and Respondent. | B321574<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV24490) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen Goorvitch, Judge.  Affirmed.

Buus Law Group and William Buus, for Plaintiff and Appellant.

Neufeld Marks and Paul Marks, for Defendant and Respondent.

————————————————

Plaintiff Jesus Nunez sued 4 Earth Farms, LLC (4 Earth) in 2020, alleging 4 Earth breached the parties' written contract when it refused to pay him for trucking services he provided in 2016 and 2017. 4 Earth sought summary judgment of Nunez's claim, asserting there was no written contract and any oral contract was time barred. Nunez contended the written contract was reflected in a series of text messages he exchanged with a 4 Earth employee. The trial court granted summary judgment. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Nunez is in the commercial transportation business.[1] In 2020, Nunez delivered a batch of invoices to 4 Earth seeking payment for trucking services he provided between June 30, 2016 and September 2, 2017. The invoices totaled $96,575. 4 Earth refused to pay the invoices. According to Nunez, 4 Earth's in-house counsel told him it was " 'not clear whether any contract or agreement existed with 4Earth,' " or " 'who agreed to this pricing.' " Further, counsel indicated that " 'after 4 years, with no one here that knows anything about this, and pricing that there's no evidence we agreed to, I don't see how we can pay these invoices.' "

In June 2020, Nunez filed a complaint against 4 Earth asserting a single claim for breach of contract "founded upon an instrument in writing." The complaint alleged that "[i]n or about June of 2016, 4 Earth Farms and Mr. Nunez exchanged several

---

[1] The parties dispute whether Nunez provided trucking services to 4 Earth as a sole proprietor, or through his corporation, South Side Transportation, Inc. We need not address that issue for purposes of this appeal and refer generally to "Nunez."

2

digital text messages in which Mr. Nunez agreed to transport market produce for 4 Earth Farms from certain locations within California to 4 Earth Farms's place of business in Commerce, California, and 4 Earth Farms agreed to pay Mr. Nunez for such transportation of market produce."

4 Earth moved for summary judgment. 4 Earth acknowledged it had used Nunez's trucking services, providing evidence that Nunez's company appeared in 4 Earth's vendor database no later than 2004, and it had records of paying Nunez's corporation "[u]p until 2019." However, 4 Earth argued it does not enter into written contracts with the trucking companies it uses, it had not entered into a written contract with Nunez, and any claim based on an oral contract was barred by the statute of limitations.[2] In support of the motion, 4 Earth offered the declaration of Jesus Becerra, a transportation manager, who indicated 4 Earth does not typically enter written contracts with its trucking vendors, and while he recalled making oral agreements with Nunez, he did not recall entering any written contracts with him. Becerra further declared that "[w]here 4Earth (and not the shipper) has agreed to pay for transportation, it is commonly invoiced for transportation at least bi-weekly, and 4Earth thereafter makes payment in the ordinary course of business. If a trucker is not paid promptly—especially for close to $100,000—it ceases providing services, and begins barraging the non-paying company with collection calls." Becerra declared he did not recall whether 4 Earth or the shipper agreed

---

[2]    4 Earth additionally contended that even if Nunez's claim was not time barred, he could not enforce any contract with 4 Earth because he lacked a proper commercial motor carrier permit to operate as a sole proprietor.

to pay for transportation on the loads reflected in the challenged invoices, and he did not recall Nunez ever complaining about not being timely paid for services he provided to 4 Earth.

In opposition to the motion, Nunez argued a written contract was reflected in text messages he exchanged with Becerra between July 2016 and September 2017.  Nunez declared he was unable to attach the original messages to his summary judgment briefing because they were stored on an old cell phone and did not transfer to his newer phone.  Nunez explained, "The only way I knew to create a hard copy version of those text messages at that time was to cut and paste them to a separate document.  By doing so, unfortunately, the identity of the texter is not shown and neither is the date, but I have handwritten the dates of the texts and have indicated the identity of the texter.  That information was based upon information obtained from my cell phone at that time as well as my present memory of events."

The resulting exhibit was 13 pages of exchanges, with Nunez's notations.  For example, the first page of the exhibit reflects the following, which appears to be text message exchanges between July 22 and July 28, 2016:[3]

_____

[3]      Nunez's handwritten notations are identified here in italics.  Nunez used first names or nicknames in his notations; we have used last names, as noted, in brackets.  Only the first page of the exhibit indicated a year—2016.  Nunez's handwritten notations appeared to indicate the message were in chronological order, bearing dates on page 1: July 22, 25, 26, 27, and 28; page 2: July 28 (continued), July 29 and 30; page 3: July 30 (continued), August 1 and 2; page 4: September 1, 2, 3, 6, 7; page 5: September 7 (continued), 8, 9; page 6: September 9 (continued), 10, 12, 13, 14; page 7: September 14 (continued), 15, 16, 17;

4

*July 22*
You got a truck in mendota for 10 plts bro [*Becerra*]
Yes I do [*Nunez*]
Ok I'll send you the info [*Becerra*]

*July 2016*
Got it thanks [*Nunez*]
[*writing illegible*] What's the pric[e] bro [*Becerra*]
$750 [*Nunez*]
Ok thanks [*Becerra*]
Can you pickup half load in mendota [*Becerra*]
No truck till        morning
Ok no problem
Need a truck up north? [*Nunez*]
Checking [*Becerra*]
Working on los banos load we're confirming [*Becerra*]
Ok let me know [*Nunez*]
????? [*Nunez*]
I'm checking sorry give me a minute [*Becerra*]
It's a go I'll send you the pickup number [*Becerra*]

Loading today: PU# 161036 [*Becerra*]
Three Star Organic Cantaloupes
560 9s

Pick up Address:
461 G STREET              [*Becerra*]
LOS BANOS, CA, 93635

---

page 8: September 17 (continued),19, 20; page 9: September 20 (continued); page 10: September 24, 28; page 11: September 28 (continued); page 12: October 8, 10, 12; page 13: October 19.  It appears all dates were in 2016.

SHIPPING # 209 826-8449
Please confirm
Got it thanks [*Nunez*]

[27] Good morning he[y] bro you got an ETA on the cantaloupe [*Becerra*]
I told my driver [*Nunez*]
Ok thanks [*Becerra*]
Everything good [*Becerra*]
Good thanks [*Nunez*]
Got a mendota got a truck [*Becerra*]
How many pallets [*Nunez*]
9 watermelon 1 honeydew [*Becerra*]
Let me know if you can't bro [*Becerra*]

Got it
FYI this place is open 24hrs [*Becerra*]
What place [*Nunez*]
Here [*Becerra*]
I was talking to your driver this morning he didn't know it was open he said he would've come earlier [*Becerra*]
I didn't know either.  I told him   because most places are open at that time
I'm in the neighborhood of you can come out [*Nunez*]
Almost home bro [*Becerra*]
Damn!!! [*Nunez*]
What time you get out [*Nunez*]

[28] Good morning any work today? [*Nunez*]
Give me a minute [*Becerra*]
Tick tock anything [*Nunez*]
4E PO#395826 (Oceano) [*Becerra*]
18-plts Org Mini Watermelons
Pick up address
Lompoc Valley Cooling [*Becerra*]
1501 N. L St
Lompoc, CA 93436

Similarly, the exhibit reflects the following exchanges between Nunez and Becerra on September 24, 2016:

Please arrange to pick up [*Becerra*]

293-Org Cilantro 4e po#402552
211-Org Mini peppers 4E PO#402551

4e po#402549
387-Org Zucchini med
527-Org Zucchini fcy/xcy

4e po#402548
319-Org squash med
477-Org Squash fcy/xcfcy

4e po#402550
64-Org Squash Zucc. (Yellow Gold Bar)

Please confirm 1 truck bro [*Becerra*]
I called cooler they say 2 trucks, its about
45 pallets [*Nunez*]
Yup send 2 trucks bro [*Becerra*]
That's a big 10-4 [*Nunez*]
Thank you for everything [*Nunez*]
No problema [*Becerra*]
Good morning any melons today [*Nunez*]
Checking [*Becerra*]
Melons???   Lompoc???? [*Nunez*]
No melons today gonna see about Lompoc [*Becerra*]
926-Org Spinach

The rest fill with Zucc 429 total let me know what
you can load to fill one truck I will send po's shortly
So just one truck right
Yes load spinach fill zucchini
There working on PO's

10-4

Hey bro you got anything going up towards Watsonville I got 3 plts supplies to that same place let me know[4]

One exchange in the exhibit explicitly referenced "rates." Nunez's handwritten notations appear to indicate that on September 7, 2016, he and Becerra texted:

Please confirm
1 Lompoc [*Becerra*]
Lompoc just called me, they have 2 truckloads they need moved out.  FYI
Do you want to check on that [*Becerra*]
Who calls you from over there [*Nunez*]
Another thing just to be on the same page, rates:
$75 per pallet on partials [*Becerra*]
$1100 out of Mendota/Los Banos [*Becerra*]
$950 out of Lompoc [*Becerra*]
10-4 [*Nunez*]
Don't want to get anybody in trouble
Yea I know they shouldn't be calling though

However, other messages also appeared to include discussion or ongoing negotiations of rates or prices.  The exhibit reflects a text exchange on July 29, 2016, in which Becerra sent Nunez a pickup address, Nunez confirmed, and Becerra added: "They didn't harvest cilantro and spinach he's just loading all the squash go ahead and bring that home we'll talk about price." Likewise, the last page of the exhibit appears to reflect text messages on October 19, 2016:

---

[4]     Although this last section suggests a back and forth exchange, Nunez's notations identified Becerra as the only texter.

> Can you get a half load at Lompoc [*Becerra*]
> Yes [*Nunez*]
> Ok bro send you the info [*Becerra*]
> Try to get a melon load [*Nunez*]
> Melons are done up that way [*Becerra*]
> Well let's follow them [*Nunez*]
> How much you paying out of Nogales [*Nunez*]
> Let you know in a bit [*Becerra*]
> 4E PO#405172 (8 plts) [*Becerra*]
> 509-Org Mini Sweets [*Becerra*]
>
> Please confirm [*Becerra*]
> Hey if I got 10 plts of supplies how much will charge
> us from here to Bakersfield tomorrow [*Becerra*]
> $750 [*Nunez*]
> Did you get the $$ for Nogales [*Nunez*]
> 1200 [*Becerra*]
> That's a good number [*Nunez*]
> I'll confirm on Bakersfield [*Becerra*]
> Can you get a Lompoc today [*Becerra*]
> The load would be for      early at Santa Cruz can
> you do it [*Becerra*]
> Yes [*Nunez*]
> Loads in Santa Cruz [*Becerra*]
> Yes I will send you the info [*Becerra*] . . . .

Nunez asserted the messages were writings that formed the basis of his breach of contract claim. At the summary judgment hearing, Nunez further argued any ambiguity in the text messages could be resolved with extrinsic evidence.

The trial court held the text messages were not "merely ambiguous;" rather, they lacked necessary material terms to form a contract and were "akin to invoices upon a prior agreement." The court concluded the parties entered an oral agreement governed by the two-year statute of limitations and the claim was

therefore untimely.  The court granted summary judgment to 4 Earth.  Nunez timely appealed.

## DISCUSSION

### I.    Standard of Review

Summary judgment is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  A defendant moving for summary judgment has the initial burden of showing a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).)  If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.)

" ' " ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' [Citation.]" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347 (*Hampton*).)

### II.    The Trial Court Properly Granted Summary Judgment

Nunez alleged he entered a written contract with 4 Earth governing all deliveries for which the complaint seeks damages.  The trial court granted summary judgment on the ground that

Nunez could not establish the existence of a written contract. We find no error.

### A. 4 Earth satisfied its burden of showing Nunez could not establish an element of his claim

As the party moving for summary judgment, 4 Earth had the initial burden of showing Nunez's claim lacked merit. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 853.) 4 Earth offered evidence that it did not have a written contract with Nunez and it typically does not enter formal written contracts with truckers, but instead places individual orders by phone and sometimes by text message. 4 Earth also argued Nunez could not prove the existence of a written contract or produce a written, signed agreement containing the material terms of any purported contract. Finally, in the absence of a written contract, 4 Earth argued any breach of contract claim would be based on an oral contract and thus time-barred. The trial court properly concluded 4 Earth made a sufficient initial showing to shift the burden to Nunez to demonstrate a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 850.)

### B. Nunez failed to demonstrate the existence of a written contract

Nunez's complaint asserts a claim for "breach of contract founded upon an instrument in writing," corresponding with Code of Civil Procedure section 337, subdivision (a), which establishes a four-year limitations period for such actions. Nunez contends the text messages "set forth the most important terms of the contract agreed upon between Nunez and Becerra," specifically that Nunez would "perform[ ] trucking services for 4Earth when called upon for agreed-upon rates." He further

11

contends the messages "clearly define what each party was required to do, and provide a reasonable basis for determining the existence of a breach." Nunez's theory is that the written messages between the parties governed their relationship and set forth their obligations as a whole.[5]

"[A] claim is *founded upon* a writing only when it 'relies upon the language within a written instrument or contract.' [Citation.]" (*JP Morgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th 678, 686.) The writing "must contain the items of the agreement and the obligations sued upon." (*Bank of America v. Security Pacific Nat. Bank* (1972) 23 Cal.App.3d 638, 645.) A written contract "results when there is a writing containing all terms and acceptance by the party to be charged." (*Mitchell v. American Fair Credit Assn.* (2002) 99 Cal.App.4th 1345, 1351 (*Mitchell*).)

The evidence Nunez proffered to oppose summary judgment failed to establish a written instrument or contract. The complaint alleges a specific theory that the breaches identified in the complaint—4 Earth's nonpayment of the invoices—were governed by the parties' written contract, which Nunez asserts is contained in the text messages. The text messages do not support this theory.

For example, Nunez alleges that "[i]n or around June 2016," he and 4 Earth exchanged text messages that set forth the

---

[5]    At the summary judgment hearing, Nunez argued in the alternative that "each communication constitutes a separate contract." The trial court rejected this argument and Nunez did not raise it in his appellate briefing. Any such argument is therefore abandoned. (*Case v. State Farm Mut. Auto. Ins. Co.* (2018) 30 Cal.App.5th 397, 402 ["[O]ur review is limited to contentions adequately raised in [appellant's] briefs"].)

parties' agreement. Yet, the earliest text messages Nunez proffered were from July 2016, and they discussed specifics of individual delivery jobs. The messages did not set forth the terms of an agreement, including payment, or provide a description of the parties' obligations. Nunez further alleges 4 Earth failed to pay him for transportation services he performed on or around June 30, 2016, out of Mendota. But the text messages do not begin until July 22, 2016, and they do not reference, describe, or memorialize any agreement as to services prior to that date. Nunez next alleges 4 Earth failed to pay for transportation services he provided on or around July 22, 2016, out of Mendota, totaling $1,100. However, the text message exchanges on or around July 22 either did not include a price term, or indicated the price was $750.

Even assuming, as Nunez argues, the message referencing rates for "partials" and deliveries out of Mendota, Los Banos, and Lompoc was a material term of the parties' agreement that governed all deliveries from those locations, the message was not sent until September 7, 2016. However, Nunez alleges 4 Earth breached the written contract by failing to pay 59 invoices for services he provided prior to that date. Nunez also alleges 4 Earth breached the contract by failing to pay for transportation services out of Pismo Beach, Watsonville, Santa Cruz, West Sacramento, and Santa Maria, yet the text messages included no discussion of rates out of those cities, or any general provisions that would govern the parties' agreement with respect to those locations.

Similarly, Nunez's handwritten notations indicate a final message date of October 19, 2016, yet he alleges 4 Earth breached the contract by failing to pay for transportation services

13

in January, July, and September 2017.  The text messages include no general terms by which it would be possible to determine what the parties' agreement was as to the January, July, or September 2017 transportation services, or whether 4 Earth breached the parties' agreement.  Other than identifying the "rates" message, Nunez neither attempts to explain how the text messages correspond to the alleged breach of contract, nor points to any particular message or messages as setting forth the terms that would establish that 4 Earth breached the contract by failing to pay the challenged invoices.

Indeed, the messages do not establish Nunez had any general obligation to perform deliveries, as he argues, "when called upon."  For example, around July 25, 2016, Becerra asked Nunez by text message if he could "pickup half load [*sic*] in [M]endota."[6]  Nunez declined this request and Becerra replied it was "no problem."  This was not indicative of an agreement or promise sufficiently definite to establish the terms of any future performance.

" 'When the evidence clearly shows . . . that the only (and the complete) subject matter that is under consideration is left for further negotiation and agreement, there is no contract, not for vagueness or indefiniteness of terms but for lack of any terms.'

_____

[6]     4 Earth argues on appeal "there is no indication of who is doing the talking" in the text messages.  However, 4 Earth did not object to the admissibility of the text messages or Nunez's handwritten notations below and the trial court did not exclude them.  On appeal from an order granting summary judgment, we consider all evidence in the papers, except that to which objections were sustained.  (*Hampton, supra,* 62 Cal.4th at p. 347.)  Thus, we accept and consider Nunez's handwritten notations.

14

[Citation.]" (*Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 59.) The text messages do not reflect a contract governing the deliveries Nunez performed for 4 Earth. Instead, the parties " 'left for further negotiation and agreement' " the fundamental question of whether Nunez would deliver produce for 4 Earth at all. (*Ibid.*)

*Citizens Casualty Co. of New York v. Otis Clark & Co.* (1971) 19 Cal.App.3d 294 (*Citizens*) is instructive. In *Citizens*, the respondent insurance brokers orally agreed to obtain three-year term reinsurance policies for the benefit of the appellant. The brokers subsequently issued a cover letter and binder for the reinsurance. The cover letter indicated the brokers had obtained reinsurance as previously agreed; the binder did not specify the term of the reinsurance. (*Id.* at pp. 297–298.) When the appellant learned years later that the reinsurance policies were only for one year, it sued for breach of contract. The appellant argued the letter and binder constituted a written agreement, and a four-year statute of limitations applied under Code of Civil Procedure section 337. (*Id.* at pp. 298–299.)

The court of appeal rejected the argument, concluding that the letter was "merely a statement that the oral agreement has been performed. It is not sufficient that the cause of action is in some way remotely or indirectly connected with an instrument in writing or that the instrument is a link in the chain establishing the cause of action. The instrument itself must contain the contract to do the thing for the nonperformance of which the action is brought. . . . [¶] Before a duty may be implied from a writing, the writing should be one which created the duty. [Citation.] The letter . . . did not purport to itself establish the terms of an agreement . . . ." (*Citizens*, *supra*, 19 Cal.App.3d at

15

pp. 299–300.) Instead, the letter "reminded the receiver of the oral agreement to which the letter was referring and reported upon the progress [the respondent brokers] had made in fulfilling its oral agreement. The letter, coupled with the binders, could be considered the work product of an agreement more readily than it could be considered the agreement itself. As such, it is evidence of the agreement rather than the agreement." (*Id*. at p. 300.)

Similarly, here, the text messages do not purport to establish the terms of an agreement as Nunez has alleged. They may be evidence of an agreement, and, as the trial court recognized, the evidence suggests Nunez and 4 Earth had an oral contract. Nunez provided trucking services for 4 Earth, and 4 Earth acknowledged it used and paid for Nunez's services "up until 2019." But to the extent the parties had a contract governing the terms of their arrangement, as in *Citizens*, the writings Nunez produced do not themselves purport to establish the terms of that agreement. The messages convey piecemeal details and logistics for various individual deliveries. They are at best "evidence of the agreement rather than the agreement."[7] (*Citizens*, *supra*, 19 Cal.App.3d at p. 300; *Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 165 [oral contract is not treated as a written contract for statute of limitations purposes "simply because a party offers some written evidence of performance"].)

---

[7] Since we conclude Nunez failed to establish the existence of a written contract, we need not consider 4 Earth's argument that any contract was void because Nunez did not possess a valid motor carrier permit.

16

## C. The court properly declined to consider extrinsic evidence in analyzing the text messages

Nunez also argues the trial court erred when it "refused" to consider extrinsic evidence in analyzing the text messages. Specifically, Nunez contends "to the extent the trial court found [the text messages] to be uncertain," it should have considered the declarations of Nunez and Becerra to clarify any ambiguities. We disagree.

A court may consider extrinsic evidence to ascertain the meaning of an ambiguous term in a contract. (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1350.) However, "extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract." (*Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33, 39.) Here, the text messages fail to establish a written contract, but this failure is not the result of any ambiguous term. Rather, as discussed above, the text messages are missing fundamental contractual terms altogether. The alleged contract cannot be forced into existence by reference to other documents, and the trial court properly declined to consider extrinsic evidence for that purpose. (*Ibid.*; see also *Mitchell*, *supra*, 99 Cal.App.4th at p. 1351 [written contract must contain all terms].)

**DISPOSITION**

The judgment is affirmed.  Respondent to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.


We concur:


LAVIN, Acting P. J.


EGERTON, J.


18